Robert Gary TYLER, Petitioner,

v.

Dr. P. J. CICCONE, Director, United States Medical Center for Federal Prisoners, Springfield, Missouri, Respondent.

Civ. A. No. 16838-3.

United States District Court
W. D. Missouri, W. D.

April 29, 1969.

Robert Gary Tyler, pro se.

Frederick O. Griffin, Jr., Asst. U. S. Atty., for respondent.

## ORDER GRANTING WRIT OF HABEAS CORPUS

BECKER, Chief Judge.

Petitioner, an unconvicted inmate of the United States Medical Center for Federal Prisoners, Springfield, Missouri, seeks leave to proceed in forma pauperis and a writ of habeas corpus for relief from certain conditions of confinement which he alleges to be suffering. Leave to proceed in forma pauperis was granted by the show cause order entered herein on December 5, 1968.

Petitioner states that he was committed to the Medical Center on August 17, 1966, under Section 4246, Title 18, U.S.C., by the United States District Court for the Eastern District of Louisiana, and that he was represented by counsel at his arraignment and "subsequent hearings." Petitioner does not state the offense with which he was charged, but he does state that no plea was made thereto and that no finding of guilt was made either by a jury or by a judge without a jury. Petitioner also states that he has filed a previous petition for habeas corpus with respect to this commitment. See Tyler v. Harris (W.D.Mo., 1964) 226 F.Supp. 852, in which petitioner asserted his incompetence to waive preliminary hearing; that he presently was competent to stand trial, or, alternatively, that his condition was permanent; that he was confined in a penal institution where he received no treatment rather than in a hospital; and that he was compelled to perform a "non-

essential clerical function for the Bureau of Prisons side by side with convicted felons." Petitioner, in that case, obtained relief from compulsory work orders (because he was not a convict), but was denied relief on the other contentions.

Petitioner states as grounds for the contention that his current conditions of confinement are unlawful as being in violation of the First, Fourth, Fifth, and Eighth Amendments, the following:

"(a) That petitioner is subject to censorship and confiscation, as opposed to inspection, of all manuscripts * *

\* \* \* \* \* \*

"(c) That petitioner is denied use of certified mail service at his discretion." [1]

Petitioner's principal contention is that the regulation of defendant [2] which requires an inmate to sign an agreement [3] allowing censorship and possible confiscation of his manuscript before he can obtain permission to prepare a manuscript of 6,000 words or less violates his First Amendment right of freedom of speech, his Fourth Amendment right against "unlawful seizure", and his Eighth Amendment right to be free of

---

1. Petitioner also originally contended:
 "That respondents refuse to acknowledge, stamp, or notarize petitions in petitioner's presence and provide paper service pursuant to Section 4004, Title 18."
 This contention will not be considered here, in view of petitioner's later request that it not be considered, since it was "moot".

2. Policy Statement H–7300.4 of respondent, which appears on the reverse side of Form #1081–B, "manuscript of inmates", reads as follows:
 "Inmates may be permitted to prepare manuscripts for publication in the institution inmate magazine or in connection with their educational program.
 "An inmate may be permitted to submit a manuscript to a publisher or editor only after review and specific approval by the Bureau. Inmates who may be regarded as professional writers or who have earned all or a major part of their living from writing shall not be permitted to send their work out for publication.
 "The inmate shall submit a request outlining the content of the manuscript to the Supervisor of Education or some officer designated by the Director, who shall approve or disapprove the request after consultation with the Associate Director or Director.
 "Manuscripts prepared without prior approval and procedures provided above shall be confiscated.
 "No manuscript shall be given to an inmate to take with him upon his discharge from the institution or forwarded to him thereafter unless the manuscript has been approved for such release by the Director. If the Director has any questions about the release of such manuscript, it shall be forwarded to the Bureau for review and final determination.
 "If the inmate prepares a manuscript for review by a publisher, he shall submit this to the Supervisor of Education for referral to the Bureau for examination and approval.
 "An inmate shall not be permitted to correspond with an editor, publisher, or literary agent regarding the placement or disposition of a manuscript until all the preceding conditions have been met.
 "A manuscript shall not be approved or released, (1) if it deals with the life history or the criminal career of the writer or that of any other inmate, or (2) it is libelous, lewd, obscene or pornographic.
 "A manuscript that falls in any of the above categories may be confiscated.
 "Inmates using quotations, statistics, or research findings from authorities in any field will, as one condition of their approval, be required to furnish written permission to use their material.
 "The inmate will be required to provide his own manuscript material except in unusual circumstances."

3. The agreement, on the face of Form 1081–B, reads as follows:
 "I agree that if permission is granted I will accept the condition that the Director of the Bureau of Prisons shall retain the authority to determine whether the manuscript shall be released to me at the time, or subsequent to my release from the institution, or whether the manuscript may be submitted to the publisher while I am still confined to the institution, or whether the manuscript shall be confiscated."

cruel and unusual punishment. The challenged regulation further provides that the finished manuscript must be approved by both the Supervisor of Education at the Medical Center and the Bureau of Prisons before it can be sent out for publication. The only standards set forth in the regulation are that the manuscript cannot be, *inter alia,* lewd, libelous, or relative to the criminal career of an inmate or convict. Inmates and convicts are further by its terms prohibited from negotiating with publishers until the manuscript has been prepared under the aforesaid conditions and permission has been obtained to mail it out. Professional writers are prohibited from sending out any work at all for publication, and manuscripts prepared without permission are subject to confiscation.

 The first defense interposed by respondent is that petitioner does not have standing to challenge the Medical Center regulation because he has not been refused permission to prepare a manuscript by enforcement of its terms nor has he complied with its requirements for mailing and thereby been refused the right to mail a manuscript to a publisher. In this regard, petitioner and respondent are agreed that petitioner obtained permission to prepare a manuscript of 6,000 words or less entitled "Pariah" or "Soldier's Fortune"; that he was subsequently thwarted by Medical Center authorities in his attempt to mail the said manuscript to his parents; that said manuscript was neither lewd, libelous, pornographic, nor relative to the criminal career of any inmate or convict; and that petitioner had not obtained the permission of the Bureau of Prisons, as prescribed in the regulation, prior to his aforesaid attempted mailing. Petitioner, thus, by applying for permission to prepare a manuscript in accordance with respondent's regulation, by being thereby obliged to sign the agreement allowing confiscation by Medical Center authorities, by being thereby necessarily limited to 6,000 words, and by being prevented from mailing out his partially completed manuscript for failure to comply with the final procedure therein provided, has been penalized under the rule in a very real sense, and therefore has standing to challenge it.[4] Further, where a regulation is invalid on its face for infringing constitutional rights it is not necessary for an individual to seek to bring himself under its restrictive provisions to determine whether it is invalid as applied to him in order to have standing to challenge its validity. Staub v. City of Baxley, 355 U.S. 313, 78 S.Ct. 277, 2 L. Ed.2d 302. This is the case with the regulation in question, which is invalid on its face as applied to unconvicted inmates of what is designated primarily as a medical treatment center. This regulation violates the constitutional rights of unconvicted persons at the center for diagnosis and treatment. Regulations of the type here challenged, to be valid as applied even to convicts, must be consistent with constitutional safeguards, authorized by statute, and relevant to the lawful functions and security of the prison. When their subject is an unconvicted person, such regulations can be justified only on grounds applicable to mental institutions. While the Constitution authorizes forfeiture of some rights of convicts, it does not authorize treatment of an unconvicted person (who is necessarily presumed innocent of pending and untried criminal charges) as a convict. Unconvicted persons charged with crime are entitled to the rights of free speech and to do business accorded to all unconvicted citizens. The challenged regulation, in its requirement that permission be obtained before allowing preparation of manuscripts, in its

4. There is some authority which says, with regard to prison regulations on the use of mails and otherwise, that a federal prisoner should exhaust his "administrative remedies" by final complaint to the Bureau of Prisons. See, e. g., Vida v. Cage (C.A.6) 385 F.2d 408. Respondent asserts that doctrine here, but it is inapplicable where the constitution demands that the right in issue be exercised unfettered by any administrative apparatus of the sort here challenged.

restriction of the length of such manuscripts, in its provision for confiscation and censorship of manuscripts, in its restriction and obstruction of circulation of such manuscripts to publishing houses or other outside sources, and in its condemnation generally of negotiation for publication, deprives the unconvicted inmate of fundamental constitutional rights and cannot therefore be enforced against him.

■■ Respondent's citation of Austin v. Harris (W.D.Mo.) 226 F.Supp. 304, to the effect that courts will not interfere with reasonable prison regulations because of the commitment of care, custody, control, and discipline of federal prisoners exclusively to the Attorney General under Section 4082, Title 18, U.S.C., is therefore inappropriate. That general principle is inapplicable in the case of an unconvicted inmate, where the courts remain under a duty to guard against the violation of federally protected constitutional and federal statutory rights beyond that which is necessarily imposed upon all citizens by the necessity of social living. The old case of Stroud v. Swope (C.A.9) 187 F.2d 850, cert. den. 342 U.S. 829, 72 S.Ct. 53, 96 L.Ed. 627,—in which the "Bird Man of Alcatraz" was held not to be entitled to negotiate for publication of his books contrary to a prison regulation, is equally inappropriate as binding authority in the case at bar. There, the petitioner was a convict. Further, the principle for which that case stands, that courts can never intervene relative to treatment and discipline of prisoners, but can only function "to deliver from imprisonment those who are illegally confined" (187 F.2d 850, l. c. 851), has long since lost its viability, even in the case of convicts. Cf. In re Baptista (W.D.Mo.) 206 F. Supp. 288.

■ In its recent decision in Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718, the United States Supreme Court held invalid a state prison regulation against activities of a convict in rendering legal assistance to other prisoners, to whom assistance was not readily available from outside sources. The restriction of the creative preparation of manuscripts has not been shown to be based on medical standards applicable to the treatment of petitioner. Furthermore, such activity does not appear to be a threat to institutional security; and it is unnecessary here to pass upon the validity of the regulation in respect to convicts. Petitioner should therefore be subject only to the general law applicable to other citizens in his preparation of manuscripts, in his negotiating for their publication, and in his mailing of them, unless recognized medical standards, applicable to petitioner, justify restriction of his activities. Respondent, accordingly, should be permanently enjoined from enforcing this regulation against petitioner under existing circumstances. It is therefore

Ordered that the petition for habeas corpus herein be, and the same is hereby, granted. It is further

Ordered that respondent be, and he is hereby, enjoined from enforcing policy statement H.7300.4 and the regulations included in Form 1081–B, "manuscript of inmates", against petitioner under existing circumstances. It is further

Ordered that respondent effectively nullify all previous punishments, if any, suffered by this petitioner for any alleged violation of the aforesaid regulation and to cease and desist from all present or future punishments under existing circumstances, and that respondent permit petitioner to mail a manuscript of "Pariah" or "Soldier's Fortune" to his parents and hereafter to negotiate for publication and mail manuscripts without reference to the aforesaid regulation. It is further

Ordered that respondent be enjoined from depriving petitioner of the use of certified mail for mailing manuscripts and correspondence in connection therewith.