William SMITH, Jr. and
Richard Schofield

v.

George SAMPSON, Sheriff, Rockingham County.

Civ. A. No. 72-125.

United States District Court,
D. New Hampshire.

Oct. 6, 1972.

Paul MacGregor, N. H. Legal Assistance, Concord, N. H., for plaintiffs.

Carleton Eldredge, Shaw & Eldredge, Exeter, N. H., for defendant.

## OPINION

BOWNES, District Judge.

This is an action by plaintiffs seeking declaratory relief under 28 U.S.C.A. § 2201, injunctive relief, and both compensatory and punitive damages under 42 U.S.C.A. § 1983 for the alleged deprivations, under color of state law, of rights, privileges, and immunities secured by the Fourteenth Amendment of the Constitution of the United States. Jurisdiction is based on 28 U.S.C.A. § 1343(3, 4).

The issue in this case is whether pretrial detainees can be compelled to have long hair cut and beards shaven in compliance with county jail regulations.

## FACTS

Plaintiffs William Smith, Jr., and Richard Schofield were arrested on burglary charges in Derry, New Hampshire, on February 10, 1972. Bail was set in the amount of $2,000 for Schofield and $3,000 for Smith. Plaintiffs were taken to the Derry District Court where a continuance was granted in their probable cause hearing in order to give Smith the opportunity to confer with his appointed counsel and to give Schofield an opportunity to obtain an attorney. Since they were unable to raise bail, the plaintiffs were bound over by the Derry District Court on February 10, 1972, and were transferred from the Derry Town Jail to the Rockingham County Jail in Brentwood, New Hampshire, on February 11, 1972, where they were lawfully incarcerated.

Upon their arrival at the Rockingham County Jail, plaintiffs were photographed and fingerprinted. During this processing, they were informed that they would have to get their hair cut since it was the jail policy not to allow inmates to wear long hair or beards. It is stipulated by the defendant that it is a rule of the Rockingham County Jail that all those lawfully admitted to the jail must have their hair cut upon the completion of processing if it is exceedingly long. The determination of what constitutes exceedingly long hair is made by the desk guard on duty at the time. This rule has been applied without exception, has been in effect since September 12, 1971, on an oral basis, and was reduced to writing on January 7, 1972. The rationale in support of this regulation is threefold: (1) to improve sanitary conditions; (2) to assist in identification of the prisoners; and (3) for security reasons. Sheriff Sampson testified that when he took over as chief administrator of the jail on September 12, 1971, after a serious stabbing, he found the jail to be a "human jungle full of filth, dirt and lice."

Both plaintiffs who had beards and exceedingly long hair by any standards, protested that the forced cutting of

their hair and beards would violate their constitutional rights. The prison officials warned them that their hair would be cut and that physical force would be used if necessary. Both plaintiffs were advised to submit willingly, and both made it clear that they would not submit to a forced haircut without a struggle.

The day following his admission to the jail Smith was called out of his cell on the pretext of being allowed to make a phone call to a bail bondsman, and he was told that he was going to get his hair cut whether he liked it or not. Smith reasserted his refusal to get a haircut and resisted as best he could, but was eventually subdued, handcuffed, and taken to the laundry room where his hair and beard were shorn closely by electric clippers.[1]

After having his hair and beard cut, Smith was returned to his cell. Smith's nose, lip, and mouth were bleeding from a punch in the mouth which he received at the start of the struggle that preceded the forced haircut. Smith's repeated requests for medical aid for his injured lip were ignored.

The jail officers then turned their attention to Schofield and told him that he too was going to get his hair cut. Schofield made it clear that he would resist. Three men then entered the cell and dragged him out of the cell and onto the cell tier where he was handcuffed. In the scuffle his right thumb was bruised and injured. A prison nurse later put Schofield's thumb in a splint. After having his hair and beard cut, Schofield was removed from the cell he had shared with Smith and was placed in solitary in cell number one.[2]

The Rockingham County Jail at Brentwood, New Hampshire, has facilities for the confinement of approximately forty to forty-five inmates, about half of whom are pretrial detainees. The convicted prisoners at Rockingham County Jail are serving sentences of up to a maximum duration of one year.

Although plaintiffs requested.showers on a more frequent basis, it was the policy of the jail to permit an inmate to take one shower a week. The plaintiffs testified that no soap was issued to them nor were any towels provided. They also testified that clean clothing was sometimes not available after a shower.

Sheriff Sampson stated that prisoners are now allowed to bathe twice a week and that more frequent showers are feasible. He testified that disinfectants are available for personal use. He did not know what was furnished to the petitioners at the time. The Sheriff also stated that after he took over the administration of the jail on September 12, 1971, he instituted a thorough cleaning, disinfecting, and repainting program which successfully eliminated the problems of filth and lice. He explained that due to the physical layout of the jail pretrial detainees and convicted prisoners are subject to the same basic rules. There are differences, however, in the treatment of pretrial detainees and convicted prisoners. Pretrial detainees are restricted to the cell block and are denied access to the jail recreation areas. They do not have to work and, although they can volunteer to work, they, unlike convicted prisoners, are not allowed to work outside the jail. Therefore, in terms of the conditions of their confinement, pretrial detainees are not treated as well as convicted prisoners.

## LAW

◼ Plaintiffs Smith and Schofield were held in the Rockingham County

---

1. Smith testified that during the haircutting he called the jail officials "fucking fascist pigs," and that they replied by stating that they were just following orders.

2. The petition does not raise any issue as to the placement of Schofield in solitary confinement. It is clear, however, that the law now requires that any inmate, either pretrial detainee or convicted prisoner, be given some sort of a hearing before summary punishment of this sort is imposed.

Jail because they were unable to raise the bail set for them. It is axiomatic that under the Constitution persons held in jail awaiting trial are presumed to be innocent of the pending and yet untried criminal charges against them. Their actual guilt or innocence remains for future determination. Tyler v. Ciccone, 299 F.Supp. 684, 687 (W.D.Mo.1969); Jones v. Wittenberg, 323 F.Supp. 93, 100 (N.D. Ohio 1971).

 The only legitimate state purpose served by holding in jail those who are unable to make bond is to make certain that they are present for arraignment and trial; it is simply a means of guaranteeing the appearance of the detainee. Hamilton v. Love, 328 F.Supp. 1182, 1191 (E.D.Ark.1971). As pointed out in Butler v. Crumlish, 229 F.Supp. 565 (E.D.Pa.1964):

The constitutional authority for the State to distinguish between criminal defendants by freeing those who supply bail pending trial and confining those who do not, furnishes no justification for any additional inequality of treatment beyond that which is inherent in the confinement itself. At page 567.

Where a person has not been convicted of a crime, any deprivation of his liberty by the state must be the "least restrictive means" of achieving the purpose of the deprivation.

In summary, all restrictions on detainees must be reasonably related to the state purpose of holding them until trial; the means used must be no more restrictive than is required to accomplish that limited purpose. Note, "Constitutional Limitations on the Conditions of Pretrial Detention," 79 Yale L.J. 941, 950 (1970); See also Covington v. Harris, 136 U.S.App.D.C. 35, 419 F.2d 617, 623 (1969).

Plaintiffs here claim that their right to wear their hair long and have a beard is a personal liberty protected by the Due Process Clause of the Fourteenth Amendment. The Court of Appeals for the First Circuit in Richards v. Thurston, 424 F.2d 1281, 1284 (1st Cir. 1970), stated that the Due Process Clause of the Fourteenth Amendment establishes a "sphere" of personal liberty for every individual, subject to reasonable intrusions by the state in furtherance of legitimate state interests.[3] The court went on to say that the governance of the length and style of one's hair is not necessarily so fundamental as those substantive rights already found implicit in the "liberty" assurance of the Due Process Clause, requiring a "compelling" showing by the state before it may be impaired. Yet the court did conclude that the right to wear one's hair as he wishes was a personal liberty within the "sphere" of the Due Process Clause of the Fourteenth Amendment which could be infringed only by a countervailing state interest which justified the intrusion, and that that countervailing state interest must be self-evident or affirmatively shown.

 Although there is disagreement over the proper analytical framework,[4] there can be little doubt that the Constitution protects the freedoms to determine one's own hair style. Indeed, the exercise of these freedoms is highly important in preserving the vitality of our traditional concepts of personality and individuality.[5] Here we have the example of two individuals who were willing to fight to try to keep their hair from being cut.

Since the issue in this case does reach constitutional dimensions, this court must proceed to examine the state interests advanced by the jail officials as jus-

---

3. Although this was a school case involving the suspension of a student who wore his hair long, the "sphere" of personal liberty protected by the Due Process Clause of the Fourteenth Amendment must certainly extend to one who is in jail awaiting trial.

4. See, e. g., Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).

5. See Breen v. Kahl, 296 F.Supp. 702 (W.D.Wis.1969), aff'd 419 F.2d 1034 (7th Cir.1969), cert. denied, 398 U.S. 937, 90 S.Ct. 1836, 26 L.Ed.2d 268 (1970).

tification for the haircut and shave regulation so as to determine whether the countervailing state interests do justify such intrusion of plaintiffs' personal liberty.

■ It is well settled that federal courts entertain a natural reluctance to interfere with the internal discipline of correctional institutions or prisons. Walker v. Pate, 356 F.2d 502 (7th Cir. 1966), cert. denied, 384 U.S. 966, 86 S. Ct. 1598, 16 L.Ed.2d 678 (1966). However, a court must not be loathe to strike down a jail regulation if it is clearly unconstitutional.

This court must balance the need for the haircut regulation against the constitutional right asserted by the plaintiffs and the degree to which it has been infringed by the regulation in question. Gilmore v. Lynch, 319 F.Supp. 105, 109 (N.D.Cal.1970), aff'd, Younger v. Gilmore, 404 U.S. 15, 92 S.Ct. 250, 30 L. Ed.2d 142 (1970). Due weight, of course, must be given to the expert opinion proffered by Sheriff Sampson. As the court in Seale v. Manson, 326 F. Supp. 1375 (D.Conn.1971) said:

In sum, the court must recognize the difficulties inherent in the administration of a prison community and must respect the need for restrictive regulations; yet, at the same time it must be solicitous of the civil and personal rights of the prisoner. At page 1379.

■ Of particular significance in this case, and a factor that weighs heavily on the scale, is that the plaintiffs are unconvicted pretrial detainees whom the law presumes innocent. Unlike convicted prisoners, the state's only asserted interest with respect to these inmates is to insure their appearance at trial; any limitation on the constitutional rights of unconvicted persons must find justification in the legitimate advancement of that interest. Tyler v. Ciccone, *supra*; Jones v. Wittenberg, *supra*; Palmigiano v. Travisono, 317 F.Supp. 776 (D.R.I. 1970). Moreover, the difference in the legitimate state interests in convicts and detainees suggest that detainees must be treated better. "Constitutional Limitations on the Conditions of Pretrial Detention," *supra*, at page 957; Hamilton v. Love, *supra*, 328 F.Supp. at page 1191.

■ The defendant advanced three principal justifications in support of the compulsory haircut and shave regulation: First, it was stated that to maintain adequate sanitary and hygienic conditions in the Rockingham County Jail, it is necessary to have all of the inmates' hair shorn closely to protect against the potential health hazard of lice and crabs. The second rationale asserted by defendant was that short haircuts are necessary to assist in identification of inmates. Third, it was claimed that security reasons dictate the shearing of new inmates' hair in that weapons and other contraband might be concealed in long hair. The Sheriff gave as an example a comb that could be concealed in a prisoner's hair and used as a weapon.

Admittedly, the state has a legitimate concern over the sanitary and hygienic conditions of its prisoners. However, Sheriff Sampson's testimony was that after a thorough cleaning, disinfecting, and repainting program, the problem with lice and filth at the Rockingham County Jail has been eliminated. Sheriff Sampson further testified that inmates are now allowed to bathe twice a week and that more frequent showers are feasible. He also stated that disinfectants are available for personal use. With frequent showers and with the use of personal disinfectants, it would not appear to be necessary to compel pretrial detainees to have their hair and beards cut in order to maintain proper sanitary conditions at the prison. Thus, absent a lice or other body vermin problem, this rationale in support of the haircut and shave regulation, in and of itself, is inadequate to justify the infringement of plaintiffs' constitutional rights. See Seale v. Manson, *supra*, 326 F.Supp. at 1380–1381.

The defendant advances the argument that the haircut and shave regulation assist in the personal identification of inmates by prison officials. The cell block is divided into two separate sections, one for pretrial detainees and one for convicted prisoners. As the number of inmates on each side of the tier approximate only twenty, it does not seem that identification of inmates is a serious problem.

Lastly, defendant claims that in order to maintain adequate security, short haircuts must be given to all inmates. Allegedly, the haircuts prevent weapons and other contraband from being smuggled into the jail. However, Sheriff Sampson indicated that it would be possible to check for weapons and contraband that might be concealed in the hair of all inmates being processed into the Rockingham County Jail without having to subject inmates to the indignity of having their hair and beard closely clipped.

On balance, the three state interests advanced in support of the compulsory haircut and shave regulation, taken together, do not justify the infringement of plaintiffs' constitutional rights to maintain their individuality by choosing the style and manner in which they wish to wear their hair.

I, therefore, rule that the jail policy relative to compulsory haircuts and shaves as applied to pretrial detainees is unconstitutional as violative of the plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment.[6]

I realize that this decision may entail some extra work as far as prison officials are concerned, and perhaps even some additional expense, but the mandate of the Constitution protecting individual rights is far more important.

## DAMAGES

 I turn now to plaintiffs' claim for damages, both compensatory and punitive, under 42 U.S.C.A. § 1983. It is apparent that both plaintiffs physically resisted getting a haircut after they were clearly warned that force would have to be used if they did not submit to a haircut willingly. Since the jail officers were under a duty to follow their own regulations, they had no alternative except to forcibly overcome plaintiffs' resistance. There was no evidence that the jail officers were vindictive in the way in which they carried out their orders. The claims for both compensatory and punitive damages are, therefore, denied.

So ordered.

---

6. I am not unmindful of other decisions upholding prison haircut regulations, but it should be pointed out that in each of these cases the courts were dealing with *convicted* prisoners. See, e. g., Brooks v. Wainwright, 428 F.2d 652 (5th Cir. 1970); Brown v. Wainwright, 419 F.2d 1376 (5th Cir. 1970); Blake v. Pryse, 315 F.Supp. 625 (D.Minn.1970), aff'd 444 F.2d 218 (8th Cir. 1971); Winsby v. Walsh, 321 F.Supp. 523 (C.D.Cal. 1971); and Ralls v. Wolfe, 321 F.Supp. 867 (D.Neb.1971), aff'd 448 F.2d 778 (8th Cir. 1971). See also "The Emerging Rights of the Confined," South Carolina Department of Corrections, William D. Leeke, Director, pp. 96–101 (1972) for a discussion of the state of the law relative to grooming and attire of prisoners.