Leonard **DOWNS** et al., Plaintiffs,

v.

**DEPARTMENT OF PUBLIC WELFARE et al., Defendants.**

Civ. A. No. 73–1246.

United States District Court,
E. D. Pennsylvania.

Dec. 28, 1973.

---

David Ferleger, Mental Patient Civil Liberties Project, Philadelphia, Pa., for plaintiffs.

Barry A. Roth, Asst. Atty. Gen., Dept. of Public Welfare, Harrisburg, Pa., for defendants.

## MEMORANDUM AND ORDER

CLIFFORD SCOTT GREEN, District Judge.

Before this Court is the defendants' motion to dismiss this civil rights action seeking damages and declaratory and injunctive relief to end the alleged "forced labor" of mental hospital patients in

Pennsylvania. The named plaintiffs,[1] and the class they seek to represent, sue state agencies and officials, individually [2] and in their representative capacity, who, allegedly, acting under color of state law, and in conspiracy with one another, deprived the plaintiffs of their right to be free from involuntary servitude and cruel and unusual punishment and their right not to be denied life, liberty, or property without due process of law.

Plaintiffs claim jurisdiction is conferred on this Court by Title 28 U.S.C. §§ 1331,[3] 1343 [4] as actions based on the Eighth,[5] Thirteenth [6] and Fourteenth [7] Amendments to the United States Constitution, as authorized by Title 42 U.S.

1. On September 11, 1973, this court entered an order granting the motion of Robert H. Esser, Herbert E. Baird, Edgar W. Louden, Sr., William Trauger, and the Patients Rights Organization for leave to intervene as parties plaintiff. Some of the intervenor plaintiffs have specifically been at Penna. state mental institutions other than Haverford State Hospital; i. e. Farview State Hospital for the Criminally Insane (Robert H. Esser and Edgar W. Louden, Sr.), Norristown State Hospital (Herbert H. Baird and William Trauger) and Retreat State Hospital (Esser). One of the intervenors, William Trauger is presently a patient at Haverford State Hospital.

Subsequent to the Court's allowance of the motion to intervene, the Court received a letter, dated October 12, 1973, from Edgar W. Louden, Sr. in which Mr. Louden requested a cancellation of the issue of rights granted to the attorney for the intervenor-plaintiffs. He stated he had not been forced to work and so could not proceed with the action. Further, he requested transfer of his action to the Third Circuit Court of Appeals for various reasons including court assistance in the implementation of a program for the manufacture of autogyro kites in connection with Pennsylvania mental institutions. The court is, of course, without power to grant this latter request; however, pursuant to the spirit of F.R.Civ.P. 8(f), on December 21, 1973, the court entered an order directing the Clerk of the Court to docket Mr. Louden's letter with attached papers as a notice of dismissal pursuant to F. R.Civ.P. 41(a)(1)(i).

2. There is no definitive statement as to the capacity in which the defendant-officials are sued. Nonetheless in accord with our decision on the jurisdictional issue with respect to these defendants and F.R.Civ.P. 8(f), we construe the complaint as asserting jurisdiction over and requesting relief against these defendant-officials in their individual capacities.

3. 28 U.S.C. § 1331. Federal question; amount in controversy; costs
(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States.

4. 28 U.S.C. § 1343. Civil rights and elective franchise
The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
(1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;
(2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;
(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;
(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

5. "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

6. "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."

7. "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

C. §§ 1983, 1985, 1988; Title 28 U.S.C. §§ 2201, 2202;[8] and F.R.Civ.P. 57 and 65.

The named plaintiffs seek to represent a class consisting of all present and former patients of Pennsylvania mental institutions.

## COMPLAINT

In light of the various contentions of the parties, it will be useful at this point, to list and describe the parties, summarize the allegations, of the complaint, and note the specific relief requested.

The original named plaintiffs are: Leonard Downs and Benjamin Lodeski, who have been patients at Haverford State Hospital; Charles Simon, who was incarcerated in three Pennsylvania mental institutions from 1938 to 1969 including Farview; Allan Siekierski, who has been a patient at Haverford State Hospital on at least six occasions since 1966, most recently beginning in November, 1972. The named intervenor-plaintiffs are: William Trauger, who was hospitalized at Haverford State Hospital almost constantly from 1968 to the present; Robert H. Esser, who was incarcerated at Farview State Hospital in 1959 and at Retreat State Hospital in 1972; and Herbert E. Baird, who was incarcerated in Norristown State Hospital intermittently from 1962 through 1966.

The defendants are the Department of Public Welfare, which supervises all activities of the Pennsylvania mental institutions and has the power to enforce relevant law and issue regulations (50 P.S. §§ 4201(2), 4202(a)); Haverford State Hospital, which is a Pennsylvania mental institution and facility (50 P.S. § 4102);[9] Helene Wohlgemuth, who is Secretary of the Department of Public Welfare, charged with exercising its powers and duties (71 P.S. § 66); William B. Beach, Jr., who is Deputy Secretary for Mental Health, Department of Public Welfare and has general supervision over Pennsylvania mental institutions; Jack Kremens, who is Hospital Director at Haverford (50 P.S. § 4102); and Ogden Hackett, who is the head of the Vocational Adjustment Services (VAS) at Haverford and who supervises the work assignments and compensation.

The work programs and alleged forced labor at Haverford Hospital are set out in some detail and this pattern is said to be maintained by the defendants in all Pennsylvania mental institutions. Much of the work is alleged to be solely for the economic benefit of the institutions, non-therapeutic, and often degrading.

The description of the Haverford work program is divided into three parts: Vocational Adjustment Service (VAS), Ward Assignments and the Snack Bar.

It is alleged that the VAS is a work program based on the theory that it is therapeutic for the patients to work every day. Typically the work day is from 9:00 to 11:30 A.M. and 1:30 to 3:30 P. M. each week day. Generally, patients are forced to do the labor in this program, although, it is admitted, some patients work voluntarily. Assignments to tasks are made by VAS or doctors. Patients are not compensated for work which they do for the benefit of the institution and, although, by policy, patients are to receive 75% of any money paid for work done for the personal benefit of staff, the inmates rarely receive anything. Although some of the work projects do not benefit the state or institution financially, generally, they do receive direct substantial benefits from patient labor. Almost invariably, the labor is non-therapeutic. Some of the forced labor includes repairing outdoor benches, sewing rag rugs, repair work in an electrical shop, furniture repair and

8. These sections provide for declaratory and other relief in matters over which a district court otherwise has jurisdiction.

9. The institutions, in which individual intervenor plaintiffs were, and where at least one still is, are also state institutions.

refinishing, delivering messages, selling food in the snack bar, dishwashing, janitorial work, grounds maintenance, and car washing. The source of coercion is said to be the boredom of institutional life and the belief of patients that it will be advantageous to them to appear to co-operate with the institution.

It is further alleged that ward assignments include janitorial and other maintenance work in their institutional wards including jobs not related to personal housekeeping. This work is uncompensated. The named plaintiffs and their class members are compelled to perform these tasks. Coercion results from deprivation of the right to leave the ward on "grounds" privileges or being otherwise restricted. Such punishment is regularly applied when assignments are not performed. Similar allegations are made with respect to the Snack Bar, except that some minimal compensation is said to be the policy; although, frequently it is not received.

Generally then, it is alleged that patients are forced to do various job functions and that the coercion results from the boredom of institutional life, the perception of patients of pressure from authorities to work, and outright denial of privileges for failure to work.

In addition to the allegation that all the original named plaintiffs were forced to do ward assignments, there are specific allegations as to each of the named plaintiffs. The work, "assigned" and "arranged", covers the entire variety noted above with some of it allegedly forced, at low or no compensation, and with promised compensation not having been received. More specifically on the details of coercion, Charles Simon alleges he was forced to work while at Farview Hospital because non-working inmates were severely and maliciously harassed and intimidated by guards.

The named intervenor plaintiffs have also set out in detail the work which they allegedly were forced to perform some of which is much more laborious than that set out in the original complaint. More specifically as to details of coercion, Herbert Baird alleges he was told that he had to perform his assigned work in order to get out of the hospital.

The plaintiffs, for themselves and all others similarly situated, seek an injunction restraining defendants from compelling patients of mental institutions to labor and from paying such patients less than reasonable wages for voluntary labor; a declaratory judgment that forced labor in mental institutions with or without compensation violates the Eighth, Thirteenth, and Fourteenth Amendments; damages against defendants for the reasonable value of the labor performed by plaintiffs and their class; damages in the amount of $1,000,000 against defendants for conspiring to deprive plaintiffs of their civil rights and for failing to prevent or aid in preventing the violations; costs and reasonable attorneys fees; and such other relief as appropriate.

## CONTENTIONS

The defendants have moved to dismiss the complaint pursuant to F.R.Civ.P. 12(b)(2) and 12(b)(6), on the grounds that the Court lacks jurisdiction over all the defendants; that all the plaintiffs lack the capacity to sue; that plaintiff, Simon, lacks standing to sue; and that the complaint fails to state a claim upon which relief can be granted. In addition, the defendants move for a more definite statement pursuant to F.R.Civ. P. 12(e).

For reasons set forth hereinafter, defendants' motion to dismiss the complaint is granted as to the defendants, the Department of Public Welfare and Haverford State Hospital; the motion to dismiss is granted as to the other defendants on the claims based on 42 U.S. C. § 1985; the motion to dismiss is granted, without prejudice, as to the damage claims against the individual defendants; the motion is denied as to the injunctive relief claims against the individual defendants.

## JURISDICTION

### State Agency Defendants

■■ .The plaintiffs do not contend that the Department of Public Welfare and Haverford State Hospital are "persons" within the Civil Rights Acts.[10]

However, plaintiffs urge that jurisdiction is properly obtained through application of 42 U.S.C. § 1988.[11] Section 1988 provides for the adoption of state law in civil rights cases when laws of the United States are not suitable for the vindication of civil rights in so far as such laws are not inconsistent with the constitution and laws of the United States. Plaintiffs suggest these non-person defendants may be liable to the plaintiffs on the ground of quantum meruit under state law and that, in addition, jurisdiction over these two "non-person" defendants may be necessary to effectuate jurisdiction over the "person" defendants.

The recent decision in Moor v. County of Alameda, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973) authoritatively forecloses the plaintiffs' contention. In *Moor*, the plaintiffs, in a damage action under 42 U.S.C. § 1983,[12] against police officers, presented the same critical argument made in this case that personal liability of the individual defendants under 42 U.S.C. § 1983 is, as a practical matter, inadequate because public officers are frequently judgment proof; thus, it was argued, it is appropriate to adopt state law and so with this state law under 42 U.S.C. § 1988, there is jurisdiction under 28 U.S.C. § 1343(4) since section 1988 is an Act of Congress.

In *Moor*, the Court held that Congress did not intend through 42 U.S.C. § 1988, to authorize federal courts to adopt, into federal law, entire causes of action from state law. Also, the Court held that 42 U.S.C. § 1988 is not an independent Act of Congress, providing for the protection of civil rights, within the meaning of 28 U.S.C. § 1343(4) but only supplements the various acts which do create federal causes of action for the violation of federal civil rights. Finally, the Court held that the approach requested would conflict with 42 U.S.C. § 1983 as interpreted by Monroe v. Pape, 365 U.S. 167, 188–193, 81 S.Ct. 473, 484–486, 5 L.Ed.2d 492 (1961), which holds that counties are not persons within the meaning of section 1983. All of these holdings are applicable to the plaintiffs' request, based on 42 U.S.C. § 1988, in

---

10. Fear v. Commonwealth of Pennsylvania, 413 F.2d 88, 89 (3 Cir. 1969), cert. den. 396 U.S. 935, 90 S.Ct. 278, 24 L.Ed.2d 234 (1969) ; United States ex rel. Gittlemacker v. County of Philadelphia, 413 F.2d 84, 86 (3 Cir. 1969), cert den. 396 U.S. 1046, 90 S.Ct. 696, 24 L.Ed.2d 691 (1970) ; Allison v. California Adult Authority, 419 F.2d 822, 823 (9th Cir. 1969) ; Wood v. Mt. Lebanon Township School District, 342 F.Supp. 1293, 1294 (W.D.Pa.1972) ; Taylor v. Pennsylvania Board of Parole, 263 F.Supp. 450 (M.D. Pa.1967).

11. "The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this chapter and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to this object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty."

12. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

this case including the conflict with 42 U.S.C. § 1983. Any argument that state instrumentalities are persons within the meaning of 42 U.S.C. § 1983 for purposes of equitable relief is foreclosed by City of Kenosha, Wisconsin v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973).

Thus, plaintiffs' argument that this Court has jurisdiction over these state agency defendants under 28 U.S.C. § 1343(4), after adopting state law under 42 U.S.C. § 1988, is controlled by *Moor* and jurisdiction must be denied.[13]

Finally, in an attempt to obtain jurisdiction over these state instrumentalities, the plaintiffs base their claims for relief on the Constitution, itself, and assert jurisdiction under 28 U.S.C. §§ 1331 and 1343(3). Despite the fact that the Supreme Court has held that the doctrine of Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1889), prohibiting a citizen of a state from suing his own state in federal court without its consent, is of constitutional dimension, Employees of Department of Public Health and Welfare, State of Missouri v. Department of Public Health and Welfare, State of Missouri, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973), plaintiffs argue that the Thirteenth Amendment is a self-executing declaration of the end of involuntary servitude and that the states cannot use their constitutional immunity from suit in federal court as a cloak for a system of involuntary servitude.

We do not disagree with the proposition that the Thirteenth Amendment is an absolute declaration that involuntary servitude shall not exist in any part of the United States. Jones v. Mayer Co., 392 U.S. 409, 438, 88 S.Ct. 2186, 2202, 20 L.Ed.2d 1189 (1968); Clyatt v. United States, 197 U.S. 207, 216–217, 25 S. Ct. 429, 430, 49 L.Ed. 726 (1905); Civil Rights Cases, 109 U.S. 3, 20, 2 S.Ct. 18, 28 (1883). This, of course, does not necessarily lead to the conclusion that

the constitutional doctrine here depriving plaintiffs of federal jurisdiction is affected. Notwithstanding the relief afforded through the doctrine of Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the plaintiffs have not attempted to demonstrate to the Court that they are without a state forum in which to press their federal constitutional claims against the state. Consequently, this Court is unable to say that the Eleventh Amendment is acting as a "cloak" for an alleged system of involuntary servitude imposed by the state.

The argument that the state is divested of its constitutional immunity from suit in federal court on the sole ground that the plaintiffs' claims arise under the Constitution is contrary to authority. *See, e. g.,* Parden v. Terminal Ry. of Ala. State Docks Dept., 377 U.S. 184, 187, 84 S.Ct. 1207, 1209–1210, 12 L.Ed.2d 233 (1964); McAllister v. State of New Jersey, 396 F.2d 776, 777 (3 Cir. 1968).

Thus, the plaintiffs' assertion of this Court's jurisdiction over the state instrumentalities, based on the self-executing nature of the Thirteenth Amendment and the fact that their claims arise under the constitution, and 28 U.S.C. §§ 1331 and 1343(3), must be denied.

*The Individual Defendants*

The defendants argue that the individual defendants are being sued in their official capacities and that suit against them is, in effect, a suit against the Commonwealth which is barred by the Eleventh Amendment since the state has not consented to suit.

The landmark case establishing that the Eleventh Amendment does not preclude a suit in federal court to seek relief from the deprivation of constitutional rights by state officials is Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). It has been established since that decision that unconsti-

---

13. The plaintiffs have not asserted and thus we do not consider the possible applicability of pendent jurisdiction to these state agency defendants in this case.

tutional actions by state officials may be enjoined and an action against individual officers, seeking injunctive relief, is not a suit against the state. Where the action and/or the statute under which the action is taken are unconstitutional, the individual officer is, for jurisdictional purposes, stripped of his representative character and thus has no jurisdictional immunity. The rationale of *Ex parte Young* also allows for damages against state officials in their personal capacity. Larson v. Domestic & Foreign Commerce Corporation, 337 U.S. 682, 687–690, 69 S.Ct. 1457, 1460–1462, 93 L. Ed. 1628 (1949).

Defendants contend that the Court lacks jurisdiction to enter an award of damages against the individual defendants, relying upon Rothstein v. Wyman, 467 F.2d 226 (2 Cir. 1972). In *Rothstein,* the district court found the geographic differences in disbursements of state welfare aid programs to be in conflict with the Social Security Act. The Circuit Court only had before it a challenge to that part of the district court remedy directing retroactive state payment of public assistance benefits and held that federal jurisdiction to grant such relief is foreclosed by the Eleventh Amendment.

▇ We agree that a judgment for damages that would, itself, bind the state is foreclosed by the Eleventh Amendment; however, it is also clear that the Eleventh Amendment does not bar an award of damages against a state official in his personal capacity. *See,* Ford Motor Co. v. Department of Treasury of Indiana, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945); Great Northern Insurance Co. v. Read, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944); Smith v. Reeves, 178 U.S. 436, 20 S.Ct. 919, 44 L.Ed. 1140 (1900); Sostre v. McGinnis, 442 F.2d 178 (2 Cir. 1971), cert. den. sub nom. Sostre v. Oswald, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740 (1972); Westberry v. Fisher, 309 F.Supp. 12 (D.Maine, 1970). The fact that the damages requested by the plaintiffs, if so-entitled, may be substantial, does not change the fact that any judgment entered would not by its own force, bind the state.

The Rothstein decision actually deals with the constitutionality of equitable relief ordering state officials to pay over state funds to the plaintiffs or the class they represent. Whether such relief is within the constitutional policy of *Ex parte Young* is not free from doubt. Compare, Jordan v. Weaver, 472 F.2d 985 (7 Cir. 1973), cert. grtd. Edelman v. Jordan, 412 U.S. 937, 93 S.Ct. 2776, 37 L.Ed.2d 398 (1973), *with,* Dawkins v. Craig, 483 F.2d 1191 (4 Cir. 1973). However, this Court is not presented with such an explicit request at this point in the litigation and, accordingly, expresses no opinion on that issue.

Having determined that the plaintiffs have not set forth a basis for jurisdiction over the state agency defendants but have set forth a basis for jurisdiction over the individual defendants, both for damages and equitable relief, we turn to the defendants' other grounds for dismissal of the action.

## FAILURE TO STATE A CLAIM

The defendants' sole contentions in this regard are that the complaint does not allege that the plaintiffs were forced to work and that the complaint admits that the work is therapeutic. Although reference to the allegations set out at length earlier in this memorandum, answers those contentions, there are more difficult issues.

▇ This circuit maintains the rule that complaints in civil rights actions must be specifically pled or are subject to dismissal. Kauffman v. Moss, 420 F. 2d 1270, 1275–1276 (3rd Cir. 1970), cert. den. 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed. 2d 84 (1970); Rodes v. Municipal Authority of the Borough of Milford, 409 F.2d 16, 17 (3 Cir. 1969), cert. den. 396 U.S. 861, 90 S.Ct. 133, 24 L.Ed.2d 114 (1969); Negrich v. Hohn, 379 F.2d 213, 215 (3 Cir. 1967). The rationale for this requirement is set out in Valley v.

Maule, 297 F.Supp. 958, 960–961 (D. Conn.1968) where the Court said:

> "As a general rule notice pleading is sufficient, but an exception has been created for cases brought under the Civil Rights Acts. The reason for this exception is clear. In recent years there has been an increasingly large volume of cases brought under the Civil Rights Acts. A substantial number of these cases are frivolous or should be litigated in the State courts; they all cause defendants—public officials, policemen and citizens alike—considerable expense, vexation and perhaps unfounded notoriety. It is an important public policy to weed out the frivolous and insubstantial cases at any early stage in the litigation, and still keep the doors of the federal courts open to legitimate claims."

█ This requirement operates against complaints that contain mere broad, conclusory allegations of deprivation of constitutional rights without setting forth factually the alleged misconduct and resultant harm sufficiently to permit the Court to make an informed judgment as to whether the wrong complained of is of federal cognizance. Negrich v. Hohn, supra; Rodes v. Municipal Authority of the Borough of Milford, supra; Kauffman v. Moss, supra. However, this policy is not to be pursued to the complete exclusion of other policies such as liberally reading complaints and that litigation, where possible, should be decided on the merits. Kauffman v. Moss, supra.

█ The plaintiffs' conspiracy count, under 42 U.S.C. § 1985,[14] must be dismissed under this requirement for there is no allegation of a conspiracy to deprive plaintiffs of the equal protection

of the laws. Griffin v. Breckinridge, 403 U.S. 88, 102–103, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971).

█ In order to prevail on the claim under 42 U.S.C. § 1983, plaintiffs must prove the defendants caused the alleged constitutional deprivations while acting under color of state law. Kletschka v. Driver, 411 F.2d 436, 447 (2 Cir. 1969); Jones v. Hopper, 410 F.2d 1323, 1326 (10 Cir. 1969), cert. den., 397 U.S. 991, 90 S.Ct. 1111, 25 L.Ed.2d 399 (1970); Basista v. Weir, 340 F.2d 74, 79 (3 Cir. 1965).

The complaint generously provides specifics on the amount and types of work performed by the named plaintiffs and state mental patients generally. Moreover, there is no absence of the allegation that this labor was forced. However, there is, generally, a paucity of facts pled relating to the force or coercion imposed upon the plaintiffs. Nevertheless, there are claims of psychological pressure and more direct punitive measures to induce labor and, at least as to two of the named plaintiffs such clearly coercive conduct is specifically alleged. Thus, sufficient facts have been pled in the complaint so as to allow the Court to determine that the action here is not clearly frivolous. No purpose is served by isolating on a particular plaintiff at this point. The allegations as to the proposed class and as to at least certain of the named plaintiffs are sufficiently factually specific to reveal a substantial claim of constitutional violation.

█ However, it is clear that personal involvement is a necessary element of a § 1983 action and that a superior official is not held liable for the acts of his subordinates merely on the basis of that relationship.

14. The only possibility of applicability of 42 U.S.C. § 1985 is section 3 thereof which provides: "If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws . . . ."

**464**

"[A] civil rights complaint must portray specific conduct by state officials which violates some constitutional right of the complainant in order to state a claim for relief." (Gittlemacker v. Prasse, 428 F.2d 1, 3 (3 Cir. 1970).

*See, e. g.,* Jennings v. Davis, 476 F.2d 1271, 1274 (8 Cir. 1973); Johnson v. Glick, 481 F.2d 1028, 1034 (2 Cir. 1973); Dunham v. Crosby, 435 F.2d 1177, 1180 (1 Cir. 1970); Bennett v. Gravelle, 323 F.Supp. 203, 214–215 (D. Md.1971), aff'd 451 F.2d 1011 (4 Cir. 1971), cert. dism'd, 407 U.S. 917, 92 S. Ct. 2451, 32 L.Ed.2d 692 (1972).

This requirement is explained by the fact that the employer in these cases is the state and the state cannot be touched either under the constitution or 42 U.S. C. § 1983. Jennings v. Davis, *supra;* Carter v. Carlson, 144 U.S.App.D.C. 388, 447 F.2d 358, 370 n. 39 (1970), rev'd on other grounds, District of Columbia v. Carter, 409 U.S. 418, 93 S.Ct. 602, 34 L. Ed.2d 613 (1973); Hill v. Toll, 320 F. Supp. 185, 189 (E.D.Pa.1970).

■ However, the requirement of personal involvement does not mean the official has to have committed the spe-*cific wrongful acts.* When a supervisor personally directs his subordinates to commit acts, or when he has actual knowledge of their acts and acquiesces in them, he is regarded as having been personally involved and is liable for his own conduct, not on the basis of respondeat superior but because of his direct personal involvement. Wright v. McMann, 460 F.2d 126, 134–135 (2 Cir. 1971), cert. den. 409 U.S. 885, 93 S.Ct. 115, 34 L.Ed.2d 141 (1972); Landman v. Royster, 354 F.Supp. 1302, 1316–1317 (E.D.Va.1973); United States of America ex rel. Bracey v. Grenoble, 356 F. Supp. 673, 674–675 (E.D.Pa.1973); Mills v. Larson, 56 F.R.D. 63, 66–67 (E.D.Pa. 1972).

■ Moreover, when equitable relief is sought as opposed to monetary damages, the requirements of personal involvement and the allegation thereof are not as rigid. This is fundamental to the effective protection of constitutional rights. *See, e. g.,* Lewis v. Kugler, 446 F.2d 1343, 1351 (3 Cir. 1971); Adams v. Pate, 445 F.2d 105, 107 n. 2 (7 Cir. 1971); Schnell v. City of Chicago, 407 F.2d 1084, 1086 (7 Cir. 1969); Lankford v. Gelston, 364 F.2d 197, 205 n. 9 (4 Cir. 1966); Jennings v. Davis, 339 F.Supp. 919, 921 (W.D.Mo.1972), aff'd, 476 F.2d 1271, 1274 (8 Cir. 1973); Wilgus v. Peterson, 335 F.Supp. 1385, 1390 (D.Del.1972); Hernandez v. Noel, 323 F.Supp. 779, 783 (D.Conn.1970); Leslie Tobin Imports, Inc. v. Rizzo, 305 F. Supp. 1135, 1141 (E.D.Pa.1969).

■ We believe that the allegations noted above as to the individual defendants in combination with the allegations of widespread forced labor are sufficient to sustain the plaintiffs' injunctive and declaratory relief claims. Nevertheless, it is in the area of damage claims that the specificity of pleading requirement has its maximum importance.

The plaintiffs have not pled specific facts sufficient to bring their claim for damages, against the individual defendants, within the requirement of showing personal involvement. There are inadequate factual allegations as to knowledge, acquiescence in, or direct involvement in coercive activities.[15] Further, the claims of many of the defendants and, of course, the class extend over years during which some or all of the named defendants may have had no contact with the Pennsylvania mental health program. For example, this Court takes judicial notice of the fact that Helene Wohlgemuth was not Secretary of the Department of Public Welfare at the time some of the claims of the named plaintiffs arose.

15. The allegation that Helene Wohlgemuth has expressed opposition to the system of forced labor in state institutions nor the al-legations as to the duties of Ogden Hackett adequately plead personal involvement for a damage action.

Thus, we dismiss the damage aspect of the action against the individual defendants; however, we do so without prejudice in order to afford plaintiffs the opportunity to replead if they so desire. The injunctive aspect of the action against the individual defendants survives. Once the specificity requirement has been met, the allegations of a civil rights claim, like any other complaint, are not to be held insufficient and the complaint dismissed unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); cf. Scher v. Board of Education of Town of West Orange, 424 F.2d 741, 744 (3 Cir. 1970).

This Court fully appreciates the complexity and sensitivity of the claim that involuntary servitude inheres in Commonwealth of Pennsylvania's mental health program. We express no opinion on the ultimate validity of plaintiffs' contentions. Nevertheless, we cannot say that it is certain that the plaintiffs could not prove facts sufficient to support their claims. While the claims presented in this action seem to be unrelated to the history and original purposes of the Thirteenth Amendment, the Supreme Court has said:

> "The undoubted aim of the Thirteenth Amendment . . . was not merely to end slavery but to maintain a system of completely free and voluntary labor throughout the United States. Forced labor in some special circumstances may be consistent with the general basic system of free labor. For example, forced labor has been sustained as a means of punishing crime, and there are duties such as work on the highways which society may compel."

Pollock v. Williams, 322 U.S. 4, 18, 64 S.Ct. 792, 799, 88 L.Ed. 1095 (1944). In light of the above and the fact that the Amendment is "[THE] denunciation of a condition, and not a declaration . . . of a particular people . . . [and] . . . reaches every race and every individual. . . .," Hodges v. United States, 203 U.S. 1, 16–17, 27 S.Ct. 6, 8, 51 L.Ed. 65 (1906), the plaintiffs' claims thereunder cannot be dismissed at this stage of the litigation.

Indeed, this Court's attention has been directed, by the plaintiffs, to a number of cases in which the Thirteenth Amendment was held applicable in the context of governmental mental institutions. Jobson v. Henne, 355 F.2d 129 (2 Cir. 1966); Wyatt v. Stickney, 344 F.Supp. 373 (M.D.Ala.1972); 325 F.Supp. 781 (M.D.Ala.1971); Henry v. Ciccone, 315 F.Supp. 889 (W.D.Mo.1970); Tyler v. Ciccone, 299 F.Supp. 684, 686 (W.D.Mo. 1969); Parks v. Ciccone, 281 F.Supp. 805 (W.D.Mo.1968); Johnston v. Ciccone, 260 F.Supp. 553 (W.D.Mo.1966); Tyler v. Harris, 226 F.Supp. 852 (W.D. Mo.1964); Ex parte Lloyd, 13 F.Supp. 1005 (E.D.Ky.1936); Stone v. City of Paducah, 120 Ky. 322, 86 S.W. 531, 533 (1905).

The *Jobson* and *Wyatt* cases are the most apposite cases which have come to this Court's attention. We do not adopt the precise position of either of them at this stage in the litigation but only rely upon them as support for our conclusion that the Thirteenth Amendment has applicability in the mental health institution context and that the plaintiffs may prove sufficient facts pursuant to the allegations of their complaint to prove a violation of the Thirteenth Amendment.[16] At this time, we do not need to speculate on the precise constrictions mandated in this context by the Thirteenth Amendment. The issues in this area of mental treatment and rehabilitation necessarily will

16. As a result of our decision on the Thirteenth Amendment issue, it is unnecessary at this time to consider the applicability of the Eighth or Fourteenth Amendments.

be complex. The explication of such a complex and sensitive constitutional issue should await the development of facts and a record.[17] *Cf.* Williams v. Eaton, 443 F.2d 422, 434 (10 Cir. 1971).

## CAPACITY

█ The defendants state the capacity of the plaintiffs to sue is questionable on the basis of the allegations of the complaint and move to dismiss on that ground.

The plaintiffs need not aver their capacity to sue and the defendants, if they so desire, must raise this issue by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleaders' knowledge. F.R.Civ.P. 9(a). The defendants have not, in any manner, attempted to fulfill the requirements of this rule despite its obviously singular applicability to these defendants.

█ Moreover, the motion to dismiss on this ground is inappropriate under F.R.Civ.P. 17. Nevertheless, if evidence is adduced which raises a substantial issue as to capacity, this Court may enter an appropriate order pursuant to F.R.Civ.P. 17(c).[18]

The motion for a more definite statement is denied. The conspiracy claim pursuant to 42 U.S.C. § 1985 has been dismissed. There is sufficient information and pleading in the complaint to inform the defendants of the basis of the claim for injunctive relief as to involuntary servitude.

17. The Court notes that, in relation to the Thirteenth Amendment claim, there is at least one *obvious classification based on* whether a patient is voluntarily admitted or involuntarily committed. Since we apparently have plaintiffs in both categories, we have not, at this time, attempted to decide what effect the fact that a patient who entered an institution voluntarily and thus presumably could leave at will, would have on the Thirteenth Amendment claim.

18. The defendants' contention that Charles Simon does not have standing to sue is spurious in light of the allegations of the complaint notwithstanding the fact that Simon has not been a patient at Haverford Hospital.