Mabel Edwards, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued February 3, 1978, before Judges CRUMLISH, JR., WILKINSON, JR. and MENCER, sitting as a panel of three.

*Michael Buncher,* with him *Carol Hewett,* for petitioner.

*Robert B. Hoffman,* Assistant Attorney General, for respondent.

OPINION BY JUDGE WILKINSON, JR., April 11, 1978:

Petitioner, a former patient at Polk State School and Hospital (Polk), has been presented with a notice of assessment in the amount of $894.00 by the respondent Department of Public Welfare (Department). This alleged liability arises from the cost of caring for the petitioner at Polk from July 1974, through September 1975. The petitioner has pursued the appropriate administrative remedies for contesting this

liability, and following an order of the administrative law judge upholding the claim, has appealed to this Court. For the reasons set forth below we must remand this case for the consideration of additional testimony and findings.

Petitioner, who is 50 years old and mentally retarded, was involuntarily committed to Polk on December 12, 1939 where she remained a resident until her release on a leave status to a group home on September 10, 1975. After her first year at the institution, petitioner was assigned housekeeping and institutional jobs at Polk for the benefit of the institution. She was not compensated for this work until January 1975 when she began to receive wages of approximately $1.05 an hour. Petitioner continued to receive this rate of pay for her work until her discharge receiving a total compensation of $531.54 for 514 hours during the nine month period. In 1964 petitioner was awarded Social Security disability benefits with the revenue agent at Polk named as the representative payee of these funds. From 1964 to July 1974 the agent assessed these benefits for her care and treatment at Polk. From July 1974 through September 1975 the revenue agent credited petitioner's account with $2,060.64 in Social Security payments and assessed petitioner $1,514.68 for care and maintenance at the institution. These Social Security checks and the bill from the State for her care and maintenance were presented to the petitioner on November 14, 1975. By this time petitioner had moved from the group home to her own apartment where she was able to maintain an independent living status with income from a part-time job and her Social Security benefits. In furnishing the apartment petitioner expended a portion of the earlier Social Security payment leaving a balance of $1,614.68 in an escrow account maintained by her attorney.

Pursuant to Section 504 of the Mental Health and Mental Retardation Act of 1966 (Act), Act of October 20, 1966, Special Sess. No. 3, P.L. 96, *as amended*, 50 P.S. §4504, the petitioner sought an abatement of the $1,514.68 assessment. At the hearing before the Department hearing officer the Department reduced its claim for maintenance and care to $894. The hearing officer determined, *inter alia*, that the petitioner's right to offset the value of unpaid labor commenced April 19, 1975, the date of new Department regulations on this issue, at which time she was receiving compensation, and that the imposition would not result in a substantial hardship on the petitioner, the statutory basis for abatement under Section 504.

Because this case involves the consideration and application of two federal court decisions and Department regulations promulgated pursuant thereto, we will outline their history and substance at this time for the sake of convenience and clarity. In *Downs v. Department of Public Welfare*, 368 F. Supp. 454 (E.D. Pa. 1973), certain named plaintiffs instituted a class action seeking damages and injunctive relief to end involuntary labor in state mental health facilities in that such forced work violated the thirteenth amendment of the United States Constitution. The court granted a motion to dismiss the claim against the Commonwealth on the basis of no jurisdiction to grant the relief and against the individual defendants as to damages, but held that the allegations of the complaint were sufficient, if proven, to support an injunction against the individual defendants. On May 6, 1974, five months later, a consent decree was entered whereby the Department agreed to prepare a plan to end assigned but unpaid work in state schools and hospitals by December 7, 1974 and a final plan submitted to the court by March 1, 1975. The consent decree also specified compensation to patient workers after

December 7, 1974 was to be made pursuant to federal guidelines under the Fair Labor Standards Act of 1938.[1] The Department regulations pursuant to *Downs* provided that payment to patient-workers shall be made according to his or her productive capacities in relation to non-handicapped workers doing similar work; the amount of pay accorded each individual was to be determined by time studies and productivity records. *See* 5 Pa. Bull. 1277 (May 10, 1975). Following the consent decree in *Downs*, a second class action was filed in federal district court by residents of state mental hospitals and schools who were receiving Social Security benefits. *See Vecchione v. Wohlgemuth*, 377 F. Supp. 1361 (E.D. Pa. 1974). In that case the Court held Sections 424 and 501 of the Act, 50 P.S. §§4424 and 4501, in violation of the due process and equal protection clauses of the United States Constitution in that their provisions permitted summary seizure of these funds for care and maintenance without a hearing. New Department regulations pursuant to *Vecchione*, set forth new rules regarding the right to a hearing, where the Department seeks to assess funds for care and maintenance. These regulations specifically state that at the hearing the patient "is entitled to the reasonable value of unpaid work benefitting the Commonwealth in reduced costs of maintenance and operation of the facility to which he or

---

[1] 29 U.S.C. §201 et seq., *as amended*. The consent decree in *Downs* followed an earlier federal decision, *Souder v. Brennan*, 367 F. Supp. 808 (D.D.C. 1973) which held patient workers in non-federal hospitals for the mentally ill and mentally retarded were "employees" within the coverage of the Fair Labor Standards Act and ordered the Secretary of Labor to prepare regulations to enforce the minimum wage and overtime compensation provisions of that act. The regulations that pertain to this case provide that time studies are to be made to determine the level of efficiency of handicapped workers and their comparable rate of compensation. *See* 29 C.F.R. §529.4.

she was admitted or committed." 5 Pa. Bull. 931 (April 19, 1975).

Before reaching the merits of petitioner's claims, we must first consider two threshold defenses of the Department raised against her appeal, first the doctrine of res judicata predicated upon the binding effect of the consent decree in *Downs, supra,* and second, that of sovereign immunity.

We need not decide the question of whether res judicata precludes the claiming of credit for unpaid work performed before the consent decree in *Downs.* There is serious doubt as to whether the consent decree in *Downs* could bind petitioner in a claim against the Commonwealth, since the court in *Downs* had already decided it would not have jurisdiction over the claim against the Commonwealth. Obviously, this jurisdiction could not have been subsequently obtained by a consent decree. However, to so hold might declare the consent decree in *Downs* as not binding on the Commonwealth. Since the hearing officer seems to have accepted all of petitioner's evidence on this point and found against her, she having the burden, the matter of res judicata on this point is moot. As to the time subsequent to the date of the *Downs* decree, clearly res judicata is not applicable.

With regard to sovereign immunity, we hold that this defense must fail under the rules laid down in *Commonwealth v. Berks County,* 364 Pa. 447, 72 A.2d 129 (1950). In that case our Supreme Court ruled that where the state voluntarily submits to a court's jurisdiction by the institution of a suit, it makes available to the adverse party as a defense such claims as have arisen out of the same transaction which gave rise to the state's suit. This defense is in the nature of a recoupment, and is limited to such amounts as the state has claimed against the defendant. In the case at bar, the Commonwealth has not

formally instituted suit. We must conclude in this case, however, that the notice of assessment given the petitioner by the Commonwealth was tantamount to instituting suit for the purposes of determining whether sovereign immunity applies. In addition, it must be noted that according to Department regulations the patient has a right to an administrative hearing on the claimed assessment charges and is statutorily and administratively accorded the right to discharge or setoff. *See* Section 504 of the Act, 50 P.S. §4504; 5 Pa. Bull. 931 (April 19, 1975). Further, after a person has been assessed liability in a final administrative action by the Department, an appeal may be taken to this Court. *See* Section 403 of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, *as amended*, 17 P.S. §211.403. Thus, we find the doctrine of sovereign immunity does not bar a claim for setoff by a patient in a state school or hospital with respect to claims which arise out of the same period for which liability for care and treatment is sought.

While petitioner has raised several issues on appeal,[2] because we find the hearing officer erred in not permitting additional evidence on the issue of the Department's compliance with state and federal regulations regarding payment to patient workers, we must remand this case for an additional hearing. The record of the hearing upon which the administrative order was based, held October 29 and November 3, 1976 discloses that on November 3 the Department presented evidence to rebut the claim for offset through testimony of the Polk Revenue Agent that petitioner

[2] Although we need not decide petitioner's other claims regarding the right to setoff for unpaid work on a quasi-contract theory or the contention that the hearing officer erred in finding no substantial hardship in the assessment, these arguments appear to have no merit.

had been paid $531.54 beginning in January 1975 pursuant to the consent decree in *Downs, supra.* When petitioner's counsel attempted to determine whether time studies had been made of petitioner's work during this time, this information was not available. The hearing officer then stated, "[L]et us further state for the record that we will permit one week for the submission of further documented proof which might help us to clarify when the appellant had commenced to be compensated and whether any time studies were performed during that period of time. . . ." The record further indicates that five days later (November 8, 1976) the hearing officer did receive from petitioner's counsel counselling and work progress reports obtained from petitioner's vocational rehabilitation file at Polk. However, by letter dated December 21, 1976, the hearing officer denied consideration of these documents stating, "I do not recall leaving the record open. . . ." Having expressly provided petitioner with an opportunity to present this evidence, the hearing examiner, we believe, could not, consistent with due process, deny petitioner the right to have this evidence presented.

To reiterate, hopefully for clarity, we are remanding this case for the hearing officer to receive "documented proof"[3] with regard to any time studies that were made that would support petitioner's claim that she was underpaid during the eight month period extending from January 13, 1975 through September 10, 1975, in violation of respondent's regulations.

Accordingly, we will enter the following

ORDER

AND Now, April 11, 1978, the order of the Department of Public Welfare in this matter dated Novem-

---

[3] *See* Record p. 73.

ber 19, 1976, is hereby vacated and the case remanded to the Department for further hearings consistent with this opinion.