William Stormer, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued May 4, 1978, before Judges CRUMLISH, JR., WILKINSON, JR. and BLATT, sitting as a panel of three.

*Arnold M. Epstein,* with him *Ilene W. Shane,* and *William Murphy,* for petitioner.

*Robert B. Hoffman,* Deputy Attorney General, with him *J. Justin Blewitt, Jr.,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for respondent.

OPINION BY JUDGE CRUMLISH, JR., August 10, 1978:

William Stormer (Stormer) appeals the adjudication of the Department of Public Welfare (DPW) which held that he was not entitled to an abatement of his assessed liability for care received from January 1, 1974 through November 18, 1974, while he was a patient at Mayview State Hospital. Stormer had attempted to claim as an offset to his liability the reasonable value of the work which he performed from August, 1973 through February of 1974.[1] His claim was based on Section 12(a)(vi) and (viii) of the regulations promulgated on April 19, 1975, at 5 Pa. Bulletin 931, which provides that a patient may obtain an abatement or modification of his assessment for the cost of treatment on the grounds that

(vi) The patient/resident is entitled to the reasonable value of unpaid work benefitting the Commonwealth in reduced costs of maintenance and operation of the facility to which he or she was admitted or committed, performed by him or her, by way of offset; or
. . . .
(viii) Any other defenses or offsetting claims in law and equity.

After a hearing, the hearing officer held that the regulations were not retroactive and that DPW was unauthorized to grant the requested abatement. We agree and affirm the adjudication.

There is nothing in the language of the regulations that would cause us to conclude that they had been intended to have a retroactive effect. It is an undisputed rule of statutory construction that "no statute shall be construed to be retroactive *unless clearly and manifestly so intended* by the General Assembly"

---

[1] Stormer had mopped floors and pushed a cafeteria cart daily while a patient.

(emphasis added)[2] and this rule has been applied to the regulations of administrative agencies. *See Jenkins Unemployment Compensation Case,* 162 Pa. Superior Ct. 49, 56 A.2d 686 (1948); *Suspension of Shankcoff's License,* 10 Lebanon 788 (1966).

Moreover, an examination of the origin of these regulations conclusively shows that they were not intended to have a retroactive effect. Briefly, as an excellent recapitulation of the Federal litigation which prompted these regulations may be found in *Edwards v. Commonwealth,* 34 Pa. Commonwealth Ct. 622, 384 A.2d 293 (1978), these regulations were promulgated as a result of a consent decree entered in the case of *Downs v. Department of Public Welfare,* 368 F. Supp. 454 (E.D. Pa. 1973). In this decree, DPW agreed to end the practice of requiring uncompensated labor by patients. The decree was executed on May 6, 1974, and required DPW to eliminate unpaid labor by December 7, 1974. However, the decree permitted patients to work without compensation during the period June 20 and December 7, 1974, provided they were informed of their right to refuse work, and it implicitly permitted DPW to require patients to perform uncompensated labor until *June 20, 1974.* It is, therefore, abundantly clear that the regulations were not intended to have any retroactive effect since no retroactive application was required by the litigation which prompted them. Since all work performed by Stormer occurred prior to February of 1974, it is manifest that these regulations, adopted in April of 1975, do not benefit him, especially since the consent decree which prompted these regulations permitted unpaid labor until June of 1974.

We note, further, that in *Edwards, supra,* we implicitly affirmed DPW's determination that a pa-

---

[2] 1 Pa. C.S. §1926.

tient's "right to offset the value of unpaid labor commenced April 19, 1975, the date of the new Department regulations on this issue." *Edwards, supra*, 34 Pa. Commonwealth Ct. at 626-627, 384 A.2d at 294. It follows that there is no need to reach the issue of whether Stormer's labor was compensable on a quasi-contract theory.[3]

Accordingly, we

### ORDER

AND Now, this 19th day of August, 1978, the decision of the Department of Public Welfare is affirmed.

---

[3] We do note, as we did in *Edwards*, that this argument appears to have no merit. *See Edwards v. Department of Public Welfare*, 34 Pa. Commonwealth Ct. at 628, 384 A.2d at 296.