**ACME MARKETS, INC., Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (JOHNSON and PETERSON M.D.), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 9, 1998.
Decided March 1, 1999.

---

Charles S. Katz, Jr., Philadelphia, for petitioner.

Brian R. Steiner, Philadelphia, for respondents.

Before COLINS, President Judge, SMITH, J., and MIRARCHI, Jr., Senior Judge.

SMITH, Judge.

Acme Markets, Inc. (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed as modified the determination of the Workers' Compensation Judge (WCJ) that medical treatment rendered to Susan Johnson (Claimant) from August 31, 1993 through December 1994 was reasonable and medically necessary and that the amount billed for the treatment was payable by Employer in accordance with the law. Employer argues that the Board erred when it suggested that the insurer is responsible for calculating the statutory fee cap on medical bills submitted for payment; that the WCJ erred when he failed to automatically admit into the evidence and to consider utilization review reports; and that the WCJ erred in consider-

ing opinion testimony of the medical provider with respect to the reasonableness and necessity of the provider's medical treatment.[1]

## I

On July 1, 1994, Employer filed with the Bureau of Workers' Compensation (Bureau) an initial request for utilization review of medical treatment provided to Claimant by Judith Peterson, M.D. on and after August 31, 1993. According to the record, the reviewing physician determined that the treatment rendered by Dr. Peterson was not reasonable and necessary. On February 22, 1995, Kaplan and Peterson Associates, P.C., with whom Dr. Peterson is associated, filed with the Bureau a petition to review the utilization review determination.

The sole issue before the WCJ was whether Dr. Peterson's medical treatment was reasonable and necessary. Claimant presented the medical testimony of Dr. Peterson, and Employer presented the testimony of Lewis Khella, M.D. The WCJ credited the testimony of Dr. Peterson, noting that Dr. Peterson obtained a complete vocational and medical history from Claimant, thoroughly examined Claimant and prescribed treatment that allowed Claimant to return to employment. The WCJ rejected Dr. Khella's testimony in its entirety as less credible than that of Dr. Peterson. On October 9, 1996, the WCJ granted the petition and ordered Employer to pay the outstanding balance owing for the treatment as shown on the provider's billing statements in the amount of $10,064.

■ Employer appealed the WCJ's decision to the Board, alleging that the WCJ erred in considering the testimony of Dr. Peterson because she was the provider of the treatment under review and in ordering Employer to pay $10,064 because that amount was in excess of the medical fee caps imposed by Section 306(f.1)(3)(i) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 531(3)(i).[2] The Board affirmed the WCJ's determination that the treatment was reasonable and necessary but modified the WCJ's order directing Employer to pay $10,064 and ordered Employer to pay the cost of the medical treatment in accordance with the medical fee caps provided in the Act. This Court's review of the Board's order is limited to determining whether the necessary findings of fact are supported by substantial evidence of record, whether an error of law was committed and whether any constitutional rights were violated. *Washington Steel Co. v. Workmen's Compensation Appeal Board (Argo),* 167 Pa.Cmwlth. 294, 647 A.2d 996 (1994).

## II

Employer argues that the Board erred in relying upon 34 Pa.Code § 127.205[3] in determining that the insurer must calculate the amounts payable under the medical fee caps for the treatment at issue. Employer correctly contends that Section 127.205 did not become effective until November 11, 1995, after the treatment which ended in December 1994. It is a well-established rule of statutory construction that "[n]o statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." 1 Pa.C.S. § 1926. This rule has been applied to regulations of administrative agencies as well. *Stormer v. Department of Public Welfare,* 37 Pa.Cmwlth. 192, 389 A.2d 722 (1978).

■ The published comments to the cost containment regulations found at Chapter 127 of the Pennsylvania Code make clear

---

1. Employer omitted a statement of the questions in its brief but corrected this omission in its reply brief.

2. Section 306(f.1)(3)(i) of the Act provides in relevant part:

   For purposes of this clause, a provider shall not require, request or accept payment for the treatment, accommodations, products or services in excess of one hundred thirteen per centum of the prevailing charge at the seventy-fifth percentile. . . .

3. 34 Pa.Code § 127.205 provides that bills submitted by providers shall state the providers' actual charges for the treatment rendered, that such statements will not be construed as unlawful requests for payment in excess of the medical fee caps and that the insurer shall calculate the proper amount of payment due for the treatment rendered.

that those regulations were not intended by the Department of Labor and Industry (Department) (which promulgated them) to be applied retroactively. 25 Pa. B. 4875 (1995). The comments state that Chapter 127 had been drafted to include a retroactivity provision, but because of strong opposition by interested parties to retroactive application as well as legal concerns, the Department deleted the proposed provision. The comments expressly state that the effective date of the regulations is the date of publication of the final-form rulemaking, which was November 11, 1995. The Court concludes, therefore, that Section 127.205 cannot be applied retroactively, and because the medical treatment was rendered prior to November 11, 1995, the Board erred in relying upon Section 127.205 to support its conclusion that the insurer must calculate the fee caps on the medical bills submitted by a medical provider.

Employer maintains that Section 306(f.1)(3)(i) of the Act governed submission of the medical bills here and that it required the medical provider to reduce its bill to the medical fee cap before submitting it to the insurer for payment. That provision, however, simply mandates that medical providers are not to bill for any amount in excess of the amount payable under the medical fee caps. However, the Department published a notice in August 1993 intended to give instruction on its interpretation of the medical cost containment provisions of the Act. In this notice, the Department specifically addressed requests for payment of medical fees as follows: "Notwithstanding a request by the provider for payment of a charge in excess of that allowable under this act, the employer/insurer should calculate and pay the appropriate charge as long as the provider has submitted the requisite reimbursement codes and medical report." 23 Pa. B. 4188 (1993). Thus the notice makes clear that the Department contemplated that the employer/insurer will calculate the appropriate charge after it has received a request for payment so long as the provider has submitted the bill in the requisite manner.

Employer notes in its brief that the Bureau explained its rationale for placing the burden to reprice bills on the insurer: according to industry custom and practice, providers traditionally do not reprice their own bills; Medicare requires providers to bill their actual charges to all payers regardless of the fee to which they are entitled; and national companies maintain databases with prices for specific procedures based on established providers' actual charges, and the databases would be skewed if providers are required to reprice their own bills. Although these considerations were advanced in support of Section 127.205, they relate to well-established medical sector practice and procedures that were also relevant at the time of the treatment at issue, which was rendered prior to the effective date of Section 127.205.

In addition, in the recent case of *Eighty–Four Mining Co. v. Three Rivers Rehabilitation Inc.*, 554 Pa. 443, 721 A.2d 1061 (1998), the Supreme Court recognized that, although the Department's 1993 notice did not have the binding effect of a properly promulgated regulation, it signaled the Department's regulatory intentions concerning the provision of the Act at issue there, Section 306(f.1)(3)(iii) of the Act. The Supreme Court reasoned that the 1993 notice was appropriate and would have been relied upon by interested parties prior to the effective date of the regulation at issue there, 34 Pa.Code § 127.301, which related to Section 306(f.1)(3)(iii) of the Act. Moreover, the Supreme Court expressly stated that this Court erred in applying, in isolation, Section 306(f.1)(3)(iii) of the Act to factual circumstances that predated the effective date of 34 Pa.Code § 127.301 without considering the Department's 1993 notice. In view of the Department's 1993 notice and the Supreme Court's holding in *Eighty–Four Mining Co.*, the Court cannot agree with Employer's assertion that requiring insurers to calculate the medical fee caps is contrary to legislative intent, which is to reduce the medical costs associated with work-related injuries and illnesses.

■ Employer next argues that the WCJ failed to automatically admit into the evidence and to consider the utilization review reports, citing *Kelly v. Workmen's Compensation Appeal Board (Pepsi Cola Bottling Co. of Philadelphia)*, 166 Pa.Cmwlth. 618,

647 A.2d 275 (1994). Claimant argues that Employer failed to raise this issue before the WCJ or the Board and that it is therefore waived. Generally, the Court will not consider any issue in its appellate review that was not raised before the agency below. Pa. R.A.P. 1551(a); *see also Williams v. Workmen's Compensation Appeal Board (Montgomery Ward)*, 127 Pa.Cmwlth. 587, 562 A.2d 437 (1989). Employer, nevertheless, argues that this issue should be decided because it did not know and could not reasonably have discovered that the reports were not part of the record and were not considered by the WCJ until it received the record from this Court. Arguably, this issue may be raised here because of the circumstances; the Court will therefore decide it.

In *Kelly* the Court merely concluded that the Board did not err in considering as evidence a notice of compensation denial filed by the employer despite the fact that the notice was not admitted into evidence at the hearing; the notice there automatically became a part of the official record when it was filed with the Bureau. This holding does not support Employer's argument because the utilization review reports here, unlike the notice in *Kelly*, were not filed by any party and therefore were not part of the record at the time of the WCJ's decision. Additionally, Employer and Claimant agree that at the time of the hearing before the WCJ, such reports were inadmissible as hearsay evidence.

■ Employer correctly points out that Section 306(f.1)(6)(iv) of the Act, 77 P.S. § 531(6)(iv), was amended in August 1996, after the close of the record on August 5, 1996, to permit the WCJ to consider utilization review reports as evidence. The WCJ's October 1996 decision specifically lists all of the evidence entered into the record before the WCJ and sets forth the WCJ's rationale for his determination. Employer knew of the decision long before it obtained access to the record from this Court and had ample opportunity to request that the reports be made a part of the record. It failed to do so.

Likewise, Employer never requested the Board to reopen the record. The Court, therefore, cannot accept Employer's argument that the WCJ erred in failing to automatically admit the reports into the record for consideration in disposing of the review petition.

Lastly, Employer argues, inter alia, that Dr. Peterson's testimony was not competent to support the WCJ's determination that the medical treatment was reasonable and necessary because Dr. Peterson provided that treatment. Employer contends that the Act requires an independent review by an authorized utilization review organization (URO) and that Dr. Peterson was neither an independent reviewer nor someone affiliated with an authorized URO. The Board concluded that these requirements specifically pertain to the initial request for utilization review and not to the appeal of the utilization review determination before a WCJ who hears the matter de novo pursuant to 34 Pa.Code § 127.556. At the time of the WCJ's decision, Section 127.556 provided: "The hearing before the Workers' Compensation judge shall be a de novo proceeding. The Workers' Compensation judge will not be bound by prior determinations made during the UR process."[4] Employer argues, again without authority, that these requirements carry forward throughout the entire review process.

■ Section 306(f.1)(6)(iv) of the Act specifically provides that either party may obtain a separate review of the initial utilization review determination by the WCJ. The Board properly determined that other evidence may be considered during the WCJ's review, including testimony of the treating physician. The WCJ considered Dr. Peterson's testimony and determined that it was credible. It is well established that credibility determinations and questions of conflicting evidence, including medical evidence, are matters for the WCJ to decide. *Spring Gulch Campground v. Workmen's Compensation Appeal Board (Schneebele)*, 148 Pa. Cmwlth. 553, 612 A.2d 546 (1992). The WCJ credited the testimony of Dr. Peterson, and

---

4. Section 127.556 of 34 Pa.Code was amended, effective January 17, 1998, to add that the URO report shall be part of the record before the WCJ, and the WCJ shall consider the report as evidence.

this Court is bound by that determination. Accordingly, the order of the Board is affirmed.

*O R D E R*

AND NOW, this 1st day of March, 1999, the order of the Workers' Compensation Appeal Board is hereby affirmed.