Bernard Tomson, J.
By way of habeas corpus[1], in an unusually literate pro se application, the defendant attacks his detention, pending trial, in the Nassau County Jail.
The papers give a broad overview of, and an insight into, conditions in the Nassau County Jail, the way it is conducted and the life -of both prisoners and those being held for trial because of an inability to post bail.
The defendant-petitioner (hereinafter, defendant) was arraigned on December 27,1973 on an indictment which charged him with kidnapping in the second degree, rape in the first degree and robbery in the first degree. On another indictment he is charged with an attempt to commit the crime of murder, kidnapping in the second degree, rape in the first degree, sexual abuse in the first degree, and other crimes. According to the People, he has spent approximately 22 out of his last 25 years incarcerated in various institutions.
The following excerpt from the defendant’s petition provides a summary of his argument :
“ The heart of Petitioner’s argument is the indistinguishable experience in confinement of convicted and detained persons here in [the] Nassau Co. Jail. The latter is as much imprisoned in a ‘ correctional facility ’ as is the former.
“ The confinement experiences of both are more than parallel; they are indistinguishable.
“ The entire spectrum of Do’s and Don’t’s, of privileges and restrictions imposed upon the convict is equally imposed upon the detained.
“ The two eat the same food, use the same library and canteen, wear the same ‘ prison blues ’, are alike called ‘ prisoner ’ and/ *71 or ‘ inmate They live in the same cells, write home on the same jail letterhead; know the same mail censorship and the same rule as to what kind of paper to write on and how many pages to write, as well as what they are permitted and not permitted to write about.
“Theirs are identical existences. They know the same liabilities and punishments for infractions (‘ Hole ’), the same denial of newspapers; they visit with their families through the same 10x7" double pane of plastic glass, forbidden and denied to touch and embrace. They know the same TV time schedule, are attended by the same physicians, retire and arise at the same time, are counted by the same correctional officers, advised and represented by the same ‘ Inmate Council ’, managed under the same security system operating out of the same centralized control center.
“The same educational classes are available to both, the same religious services. The lives of both are overseered by the same official attitudes.
“If the convicted and detained are different, sired by distinctive legal categories, framed in different legal concepts, then these differences exist only on paper, and not in fact.”
The Nassau County Commissioner of Corrections, James J. Treuchtlinger, submitted a lengthy affidavit describing the facilities and administration of the Nassau County Jail.[2] According to this affidavit, detainees and prisoners are generally housed in separate cell blocks, though within the same building. While they eat the same food (as does the staff) and use the same recreational and educational facilities, they do so at different times. The recreational facilities include weights, punching bags, ping pong tables, TV, assorted games, handball, hi-fi, and the use of the main library which offers books, magazines, newspapers, McKinney’s Statutes and another hi-fi set with earphones. The jail will soon offer a $35,000 law library as well. Religious services, televisions in each cell block and weekly movies are also available to both detainees and prisoners. Detainees and prisoners intermingle in the remedial, vocational and high school equivalency courses provided for inmates and both may undertake college level correspondence courses.
*72 The mail of both detainees and prisoners is subject to regulation, but not censorship, under 7 NYCRR 5100.5. Outgoing special correspondence to public officials, attorneys and the courts is regulated only to the extent that the envelope and its contents are examined in the inmate’s presence to insure the absence of contraband. It is neither read nor censored. (7 NYCRR 5100.5.) Incoming special correspondence is subject to the same type of' inspection. (7 NYCRR 5100.5.) Other mail is subject to rules and regulations furnished inmates upon intake. Nassau County Jail rule 36 (hereinafter NCJR 36) provides that letters may be sent to and received from an approved list of relatives and such others as approved by the warden. Inmates may not correspond with inmates in other penal institutions or with former inmates without the warden’s approval. (NCJR 38.) Letters must be written on regulation stationery bearing the jail letterhead (NCJR 40, currently under revision) and cannot exceed two pages in length. (Since the application was made, the court has received letters exceeding nine pages not on the jail letterhead.) The latter requirement is premised on a concern for postage costs, but there is no limit on the number of letters written. NC JR 42 provides that inmates shall not discuss institutional matters or other inmates in their correspondence, but it is difficult to imagine how this rule can be enforced since NCJR 37 provides that there shall be “No censorship except for contraband ’ ’.
Detainees and prisoners are subject to the same rules and regulations governing visits. Each inmate with a good conduct record may receive visits once a week from no more than two individuals (NCJR 44) and only those listed on the correspondence list may pay visits to an inmate, with such exceptions as the warden may grant (NCJR 43). Visiting privileges may be suspended for poor conduct or for other good reasons (NCJR 46). No visiting privileges will be extended to anyone on Easter, ■Christmas, New Year’s Day, Thanksgiving and the Fourth of July. (NCJR 48.) During visits a glass partition separates the visitor and the inmate. Communication is by telephone.
There are other rules and regulations applicable to both pretrial detainees and convicted prisoners. To discuss them all would be pointless. For our present purposes, it suffices to note that respondent justifies such rules and regulations as are applicable to detainees as necessary to assure the detainees’ attendance at trial and the orderly operation of the jail.
*73 In his reply affidavit the defendant states “ Contrary to what the 'Commissioner sees as the 1 essence ’ of my petition, I do NOT 1 contest jail conditions ’
The facts here then are not contested. The question presented is stated by the defendant in different forms: 1 ‘ The core of the problem is this —: is your detainee in detention or imprisonment? ”
“ For the County to insist that I am simply [1] detained ’ would be tantamount to having told Carl Chessman he was in Buckingham Palace when in fact he was in a San Quentin death cell.”
“ . . . Nassau Co. jail is as much a prison for the detainee as for the convict under sentence.”
In sum, the defendant attacks his method of detention and the statutes which govern his detention, and concludes as follows: “ Wherefore, your Petitioner respectfully asks this Honorable Court to issue its Order to the Sheriff, to relieve Petitioner of the unlawful prison confinement and to detain him in a manner, which is not a prison situation.”
The major thrust of the defendant’s argument is that the rights of the pretrial detainee are violated when he is treated in the same fashion as the convicted prisoner.
“ There are certain minimum standards below which today’s society cannot sink in its treatment of those of its members who must, for one reason or another, be confined in jails and prisons.” (Collins v. Schoonfield, 344 F. Supp. 257, 264.) . If convicted persons do not pass beyond the reach of constitutional guarantees upon crossing the prison threshold (Jones v. Wittenberg, 323 F. Supp. 93, 98, affd. sub nom. Jones v. Metzger, 456 F. 2d 854; .Civil Rights Law, § 79-c), then pretrial detainees must retain rights of even broader scope. Among the rights[3] retained are the Eighth Amendment’s prohibition on cruel and unusual punishment, the Fourteenth Amendment’s guarantee of equal protection and the due process clauses of the Fifth and Fourteenth Amendments.[4]
The Eighth Amendment’s ban on cruel and unusual punishment is made binding upon the States by the Fourteenth Amendment. (See Robinson v. California, 370 U. S. 660, 667.) Of *74 course, since no punishment can be reconciled with the presumption of innocence, there is a certain incongruity in discussing the treatment accorded pretrial detainees in terms of cruel and unusual punishment. (Hamilton v. Love, 328 F. Supp. 1182, 1191.) Nevertheless, inasmuch as “ the basic concept underlying the Eighth Amendment is nothing less than the dignity of man ” (Trop v. Dulles, 356 U. S. 86, 100), the rules evolved under that amendment provide a standard against which to measure the treatment of pretrial detainees. (See Anderson v. Nosser, 438 F. 2d 183, 190-191, cert. den. 409 U. S. 848; Rhem v. McGrath, 326 F. Supp. 681, 689; Jones v. Wittenberg, 323 F. Supp. 93, 99-100, supra.)
Section 1 of the Fourteenth Amendment provides that “ No State shall * * * deny to any person within its jurisdiction the equal protection of the laws.” This guarantee requires that those similarly situated be classified and treated similarly and that both the classification and treatment be rationally related to a legitimate State interest. (Hamilton v. Love, 328 F. Supp. 1182, supra. See note, 79 Yale L. Rev. 941, 947-953.) The same State interest underlies the classification and treatment of pretrial detainees and those released on bail; to wit, securing their attendance at trial.[5] Consequently, any restraint imposed upon the pretrial detainee in excess of those imposed upon individuals free on bail must be justified by a compelling necessity and must constitute the least restrictive method of achieving the legitimate State purpose. (Christman v. Skinner, 67 Misc 2d 232, 234; Brenneman v. Madigan, 343 F. Supp. 128, 138; Hamilton v. Love, 328 F. Supp. 1182, 1191-1192, supra; Jones v. Wittenberg, 323 F. Supp. 93, 100 supra.) The simple fact of confinement, of course, entails some loss of liberty in excess of that suffered by an individual released on bail which is nonetheless permissible. (Christman v. Skinner, supra; Collins v. Schoonfield, 344 F. Supp. 257, 284, supra; cf. People ex rel. Gonzalez v. Warden, 21 N Y 2d 18, cert. den. 390 U. S. 973.)
The rights retained by pretrial detainees, both those already discussed and others not mentioned, may be conveniently summarized by simply noting that the pretrial detainee is entitled to due process of law.[6] ‘ ‘ Due process of law is a summarized constitutional 'guarantee of respect for those personal immuni *75 ties which, as Mr. Justice Cardozo twice wrote for the court, are ‘ so rooted in the traditions and conscience of our people as to be ranked as fundamental ’, [citation omitted], or are 1 implicit in the concept of ordered liberty ’ [citation omitted] ”. (Rochin v. California, 342 U. S. 165, 169.) Restraints imposed upon pretrial detainees in excess of those reasonably related to the purpose and fact of his confinement constitute a deprivation of due process. (Brenneman v. Madigan, 343 F. Supp. 128, 137, supra; Jones v. Wittenberg, 323 F. Supp. 93, 100, supra; see Sostre v. McGinnis, 442 F. 2d 178, 198; Seale v. Manson, 326 F. Supp. 1375, 1379; Tyler v. Ciccone, 299 F. Supp. 684, 687-688.)
Thus, one detained in lieu of bail before trial may be subjected to only such restraints as are reasonably related to assuring his attendance at trial. However, it does not follow that every restraint imposed equally upon the pretrial detainee and the convicted prisoner is a violation of the detainee’s rights. That convicted prisoners are subject to punitive or rehabilitative measures does not mean that every rule or regulation applicable to them serves a punitive or rehabilitative purpose. Institutional life necessarily entails rules and regulations designed to promote order, health, safety and security. (Christman v. Skinner, 67 Misc 2d 232, 234, supra.) Such rules may be applied equally to pretrial detainees and convicted prisoners without transgressing constitutional limitations. Thus, it is of no moment that pretrial detainees and convicted prisoners confined to the Nassau County jail must use the same library and canteen (at different times), wear the same uniforms (see Seale v. Manson, 326 F. Supp. 1375, 1382-1383, supra, occupy cells similarly appointed, share the same TV time schedules, be treated by the same physicians, rise and retire at the same hours or attend the same educational classes (at their own option). As applied to convicted prisoners, none of these conditions appears to serve a punitive or rehabilitative purpose such as would prevent their equal application to pretrial detainees.
The conditions prevailing in the Nassau County Jail are strikingly superior to those in various other detention facilities which have been the subject of recent litigation.* [7] In one such case, the court noted: ‘ ‘ The official policy of the State of Ohio is that the standards of punishment which prevailed in medieval times are to be followed in dealing with thosp convicted of crimes. *76 Insofar as possible, they are to be removed to remote places, and confined in harsh and forbidding prisons. In constructing its newest prison facility, the ¡State selected one of its most sparsely populated areas as a site, and a medieval French prison as the basic model for the building.” (Jones v. Wittenberg, 323 F. Supp. 93, 99, supra.) (See Collins v. Schoonfield, 344 F. Supp. 257, supra; Brenneman v. Madigan, 343 F. Supp. 128, supra; Hamilton v. Love, 328 F. Supp. 1182, supra; Rhem v. McGrath, 326 F. Supp. 681, supra; 79 Yale L. Rev. 941, 942-947 supra.) The Nassau County jail is not only a superior institution, but continuing efforts are being made to improve it. (See Cahn, Report on Nassau County Jail, 19 Crime and Delinquency 1 [1973].) Under these circumstances there appears to be no reason why the Sheriff cannot, pursuant to section 500-a of the Correction Law, house both pretrial detainees and convicted prisoners separately within the same building.
All this is not to say that the conditions under which pretrial detainees are confined in Nassau County should not continue to be reviewed. Official regulations of correspondence by convicted prisoners (Matter of Brabson v. Wilkins, 19 N Y 2d 433; Sostre v. McGinnis, 442 F. 2d 178, supra; see People v. Graydon, 69 Misc 2d 574) and by pretrial detainees (Collins v. Schoonfield, 344 F. Supp. 257, 276-277, supra; Rhem v. McGrath, 326 F. Supp. 681, 690-691, supra), is permissible where justified.[8] It has been suggested that the limitations on length and permissible addresses as well as the requirement that letters be written on prison stationery appear to be excessively restrictive, at least *77 as applied to those who are willing to obtain their own stationery and pay the postage. (See Rhem v. Malcolm, 371 F. Supp. 594, 620 et seq.; Brenneman v. Madigan, supra, p. 142; Jones v. Wittenberg, 330 F. Supp. 707, 718-719.) Similarly, the visitation restrictions have been criticized. (See Rhem v. Malcolm, supra, p. 601 et seq.; cf. Brenneman v. Madigan, 343 F. Supp. 128, 141, supra; Singer, Privacy, Autonomy, and Dignity in the Prison, 21 Buf. L. Rev. 669, 704-710.) Additionally, the right to deprive a pretrial detainee of visiting privileges as a disciplinary measure has been questioned. (Collins v. Schoonfield, 344 F. Supp. 257, 269, supra.)
It cannot be said that the over-all conditions under which the defendant is confined constitute such an unreasonable encroachment on protected freedoms as to render the detention unconstitutional or otherwise illegal.
To paraphrase Procunier, here the regulations and practices in question further an important or substantial governmental interest and the limitation of the defendant’s freedoms is no greater than is necessary or essential to the protection of the particular governmental interest involved.
The application for a writ of habeas corpus is denied.

. CPLR 7002 (subd. [b], par. 4); People ex rel. Brown v. Johnston (9 N Y 2d 482, 485); People ex rel. Rockey v. Kreuger (62 Misc 2d 135, 136); see, generally, Presier v. Rodriguez (411 U. S. 475, 499).

. See appendices to answering affidavit: Nassau County Jail Rules and Regulations; Sheriff’s Order Number 25 of 1972 (Personal. Appearance — Inmates); Commissioner’s Order Number 32 (Disciplinary Punishments); Schedule 1 (Housing by Cell Block); Schedule 2 (Visiting Hours); Schedule 3 (Recreation Hours); By-Laws of the Inmate Council and letter accepting them from the Commissioner,

. See, also, Procunier v. Martinez (416 U. S. 396), where the Supreme Court adopted the novel approach of analyzing the censorship of prisoner correspondence in terms of the rights of the addressees and not those of the prisoners.

. Due process especially as applied to prison discipline has been the most fertile source of recent litigation. (See, inter alia, Wolff v. McDonnell, 483 F. 2d 1059, cert. granted 414 U. S. 1156, argument heard April 22, 1974, 15 Cr. L. 4034.) ,

. See Fox, Board Told Bail Reform Is Essential, N. Y. L. J., April 24. 1974, p. 1, col. 4; Fox, Clark Backs Bail Reform; Scores Tombs, N. Y. L. J., April 25, 1974, p. 1, col. 6.

. See Wilkinson v. Skimmer, 34 N Y 2d 53; Subject of Andelman, Prison Hearings Ordered for Solitary Confinement, New York Times, May 3, 1974, p. 41, col. 7-8.

. Compare detention conditions at the Nassau County Jail with those at the Manhattan House of Detention comprehensively reviewed in Rhem v. Malcolm (371 F. Supp. 594).

. Cf. Procunier v. Martinez (416 U. S. 396, 413-414), which holds that censorship of prisoner correspondence is justified only where: “ First, the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression. Prison officials may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements. Rather, they must show that a regulation authorizing mail censorship furthers one ¡or more of the substantial governmental interests of security, order and rehabilitation. Second, the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved. Thus a restriction on inmate correspondence that furthers an important or substantial interest of penal administration will nevertheless be invalid if its sweep is unnecessarily broad. This does not mean, of course, that prison administrators may be required to show with certainty that adverse consequences would flow from the failure to censor a particular letter. Some latitude in anticipating the probable consequences of allowing certain speech in a prison environment is essential to the proper discharge of an administrator’s duty. But any regulation or practice that restricts inmate correspondence must be generally necessary to protect one or more of the legitimate governmental interests identified above.”