David O. Boehm, J.
In this action for a declaratory judgment and a permanent injunction, the plaintiff brings this motion for a preliminary injunction pursuant to CPLR 6301, and also asks leave to proceed as a class action.
The suit against the defendant, individually and as Sheriff, and the County of Genesee, is brought by the plaintiff on behalf of himself as a pretrial detainee in the Genesee County Jail and other pretrial detainees therein as a class. Pretrial detainees are persons accused of a crime and awaiting trial. They are held in jail because they are unable to post bail or because the crime of which they are charged is, by law, nonbailable. They have neither been convicted nor sentenced.
It is undisputed by defendants that pretrial detainees are treated virtually the same as convicted prisoners. Their rights and privileges are no greater and they are subject to all of the same rules, regulations and restrictions and limitations.
*897 Since each pretrial detainee in the Genesee County Jail is in the same class, location and situation as every other pretrial detainee who is or will be confined there, permission was granted for the action to proceed as a class action. Reference therefore will hereafter be made to "plaintiffs”.
The plaintiffs complain that they are being deprived of rights to which they are clearly entitled under the United States and New York Constitutions, the Correction Law of New York and the regulations issued thereunder by the Department of Correctional Services. These complaints mainly involve visitation, religious exercise, physical exercise, correspondence, telephone use, disciplinary procedures, censorship of reading material, hygiene and medical care.
The present motion seeks to require the defendants to enlarge and extend the rights of the plaintiffs with respect to the foregoing prior to final judgment. Although the action is framed as one seeking to enjoin the defendants from violating the constitutional and statutory rights of the plaintiffs, the relief actually sought is for a mandatory injunction compelling action rather than prohibiting it.
Regardless of whether or not an article 78 proceeding is available, the plaintiffs’ resort to the remedy of declaratory and injunctive relief is proper where, as here, constitutional relief is sought (Lutheran Church in Amer. v City of New York, 27 AD2d 237, mod. 35 NY2d 121; Firestone v First Dist. Dental Soc., 59 Misc 2d 362).
The constitutional arguments of the plaintiffs are essentially three-fold. They contend:
(1) Defendants have violated the due process rights of plaintiffs under the Fourteenth Amendment because, as unconvicted detainees, their restraint goes beyond securing their appearance at trial, which is the only purpose for which they may legally be held;
(2) Defendants have violated the plaintiffs’ equal protection rights, also guaranteed by the Fourteenth Amendment, because they are held in more restrictive and harsher conditions than both convicted prisoners and the women pretrial detainees from Genesee County who are held in the Albion Correctional Facility in which the greater privileges accorded by the New York Department of Correctional Services are available; and
(3) Defendants have violated the plaintiffs’ Eighth Amend *898 ment rights because, as pretrial detainees, the conditions of their detention constitute cruel and unusual punishment.
Most of the plaintiffs’ allegations as to the limitations imposed upon use of the telephone, receiving and sending letters, noncontact visiting periods, the receipt and reading of magazines and newspapers, medical care and personal hygiene, religious services, physical exercise and recreational facilities, are undisputed. Others are not, such as the availability of law books and the disciplinary hearing procedures provided.
The plaintiffs argue that all are of constitutional dimensions, particularly as they apply to their class; and that if a temporary injunction is not granted they will suffer irreparable injury because of the continuing deprivation of their constitutional rights pending trial and final judgment.
In support of this position, counsel for plaintiffs have mounted a formidable arsenal of statute, regulatory and case law, State and Federal. They are to be commended for the zeal and scholarship manifested in their pleadings, motion papers and legal memoranda.
It should, at the outset, be made clear that the intervention by a court in the administration of a jail or prison is not for the purpose of turning it into a "hotel or country club.” Like many other courts, this court has been responsible for populating institutions such as the Genesee County jail. It is well aware that those who are sent there are criminal malefactors. It is fully cognizant of the nature of their crimes. It knows long before the superintendent of the penal institution does, what they have done and how they have lived.
Such institutions have been visited by this court and it realizes only too well that nothing it does, or any other court does, is capable of transforming a jail into anything remotely resembling a hotel or country club.
But, at the very least, this court can enforce compliance with the law and it is toward this end, and this end alone, that courts find themselves brought into the internal administration of jails and prisons.
As the United States Supreme Court declared several years ago, "Federal courts sit not to supervise prisons but to enforce the constitutional rights of all 'persons’, including prisoners.” (Cruz v Beto, 405 US 319, 321.) These words apply to State courts as well. The Fourteenth Amendment does also.
*899 The guarantee of the Fourteenth Amendment requires that those similarly situated or classified be treated similarly. It provides: "No State shall * * * deny to any person within its jurisdiction the equal protection of the laws.”
The regulations issued by the Correction Department set forth certain mandatory minimum standards relating to such things as visitation by family, contact visits, permissible bringing in of books and periodicals, correspondence privileges and disciplinary hearing procedures.
The Correction Law (§§ 500-k, 137) imposes some of the same standards upon county jails as are established for State penal institutions.
Although pretrial detainees are not in the same class as convicted prisoners, they are, by virtue of their detention in the same county jail, at the very least similarly situated and their presumption of innocence gives pretrial detainees even greater rights. Because of their presumption of innocence, pretrial detainees retain all of the rights of every other citizen except for those limitations necessary to assure their appearance at trial. Therefore, if confined pending trial, pretrial detainees may only be subjected to such restraints as are reasonably related to the only legal purpose of confinement, i.e., assuring attendance at trial. Any restraints imposed upon them in excess of those reasonably related to that purpose constitute a deprivation of due process unless they are "justified by a compelling necessity and * * * constitute the least restrictive method of achieving the legitimate State purpose.” (People v Von Diezelski, 78 Misc 2d 69, 74; see also, Christman v Skinner, 67 Misc 2d 232, appeal dsmd. 38 AD2d 884.)
This does not mean that restraints imposed upon pretrial detainees are improper, simply because the same restraints are imposed upon convicted prisoners.
As Judge Bernard Tomson pointed out in his very scholarly opinion: "Institutional life necessarily entails rules and regulations designed to promote order, health, safety and security * * * Such rules may be applied equally to pretrial detainees and convicted prisoners without transgressing constitutional limitations.” (People v Von Diezelski, supra, p 75.)
However, this applies to pretrial detainees only to the extent "security, internal order, health, and discipline of the prison demand; considerations of rehabilitation, deterrence or punishment are not material.” (Seale v Manson, 326 F Supp *900 1375, 1379; see also, Rhem v Malcolm, 371 F Supp 594, affd in part and remanded in part 507 F2d 333; Constitutional Limitations on the Conditions of Pretrial Detention, 79 Yale L.J. 941.)
But the plaintiffs claim convicted prisoners in State penal institutions enjoy greater rights and privileges than the plaintiffs who, were it not for their inability to obtain bail, would be enjoying unrestricted freedom on the outside.
For example, prisoners in State institutions have the privilege of many more visits by a much wider group of permitted visitors than do the plaintiffs. State prisoners have the greater freedom of visits unseparated by bars or screens. State prisoners enjoy far better physical exercise and recreational facilities. They have full-time medical care. They may obtain books, magazines and reading material almost without restriction. Their correspondence and telephone privileges go well beyond those made available to the plaintiffs.
Therefore, if it is shown that prisoners possess much greater rights than the unconvicted plaintiffs, this would not only raise grave constitutional questions, but also a serious question as to a violation of the previously cited sections of the Correction Law (see also, Correction Law, § 500-e).
However, at this stage of the action the foregoing possibilities do not necessitate granting a preliminary injunction as to all of the relief sought by the plaintiffs in spite of the fact that many of the rights they seek have already been created or required in one form or another.
For example, the defendants assert that there is presently in existence a legally sufficient procedure for disciplinary hearings. The plaintiffs not only deny this, thereby placing the matter in issue, but also argue that such a hearing requires, among other things, the right to counsel, the right to cross-examine witnesses, and a hearing officer who is not affiliated with the institution. These, by the plaintiffs’ own admission at argument, go beyond the present requirements of due process (Wolff v McDonnell, 418 US 539; Wilkinson v Skinner, 34 NY2d 53; Sostre v McGinnis, 442 F2d 178, 198, cert den sub nom. Oswald v Sostre, 405 US 978).
That the rights mandated by Wolff and Wilkinson must be provided to the plaintiffs is beyond question. What is in question is whether they are now provided, as the defendants claim, or whether they are not, as the plaintiffs claim. Where the facts upon which the right to a final judgment are in *901 controversy, a preliminary injunction will not be granted (Duro-Test Corp. v Donaghy, 9 AD2d 860).
The defendants, however, do not deny that they prohibited the plaintiffs from obtaining daily and religious newspapers and no sufficient reason was given for this obvious First Amendment violation. Therefore, at argument it was ordered that this practice be enjoined pending the trial.
Nor do the defendants deny that only those members of the immediate family, except a spouse, who are over 18 years may visit detainees. The only reason given for this restriction is that the "children * * * could see into the confinement area itself and it is believed that the experience would not be good for them”. In their memorandum of law the defendants enlarge upon this by adding that there would be an "inherent risk of the sight of shocking conduct”.
However, informed parents are the best judge of whether or not an experience is good for their own children. The sheriff does not stand in loco parentis as to his prisoners’ children. It is difficult to see why he should be permitted to place an arbitrary age limit upon children who wish to visit their father or mother when the regulations issued by the Department of Correctional Services on the same subject do not impose a similar restriction.
To say that children would be subject to the risk of seeing "shocking conduct” is to cast a terrible reflection upon the supervision of the jail. It is the sheriff’s duty to prevent such conduct, not to conceal it, even from youthful visitors.
In the absence of a showing of any reasonable relationship between this age restriction and considerations of institutional security, internal order, health or discipline, there is no justification for such a rule and the defendants are enjoined from maintaining or enforcing it pending the action. The plaintiffs’ motion for a preliminary injunction as to this is also granted.
In addition, the defendants have totally failed to show "compelling necessity” for limiting the correspondence of plaintiffs to those persons on an approved mailing list. Indeed, their motion papers set forth no reason whatsoever for this rule. Therefore, the plaintiffs are granted an injunction pendente lite enjoining the defendants from limiting the persons with whom the plaintiffs may correspond for any reason other than one demonstrably related to the security, discipline or health of the institution. For the same reason, defendants are *902 also enjoined, from limiting the number of nonlegal letters that the plaintiffs may write and send out, provided that, pending the trial, all nonlegal letters in any week, in excess of the two now provided for by the defendants shall be at the plaintiffs’ expense. Pens or pencils shall be provided for all letters upon request.
Although the ultimate rights of parties should not be decided upon affidavits in advance of trial, the failure to make denials or to make them convincingly will obviously influence a court to exercise its discretion in favor of granting a preliminary injunction, particularly where any loss or inconvenience resulting therefrom is comparatively small (Heckscher Bldg. Corp. v Melton, 113 Misc 184, affd 194 App Div 957; 12 Carmody-Wait [2d ed], § 78:63).
As to the other demands of the plaintiffs, such as but not limited to, the unrestricted right to write and receive nonlegal letters subject to the standards of Procunier v Martinez (416 US 396); the unhindered right to obtain books and magazines other than directly from the publisher or through the sheriff; the right to have increased visitation rights; the right to have contact visits; the right to have medical attention unfettered by the discretion of a lay deputy; the right to have physical exercise somewhere other than the jail corridor; the right to shave more than twice a week; the right to proper and precise notice of the jail rules and regulations, many are rights already granted by a multitude of State and Federal decisions generally flowing from the due process or equal protection clauses (cf. Rhem v Malcolm, 371 F Supp 594, supra, and cases cited therein).
But due process also requires that the defendants be permitted to present witnesses and evidence in their own behalf at a trial and an opportunity to establish a reasonable basis for the apparent distinction between the classes of State institutionalized convicted prisoners, Albion institutionalized women pretrial detainees and the plaintiffs. It is not enough, for example, to point out that State penal institutions permit contact visits but that the defendants do not, without at the same time giving the defendants an opportunity to show that it had taken reasonable steps to determine the feasibility of contact visits, with considerations such as space limitations, risk of introduction of contraband and the installation of a classification system.
No compelling State reason has been shown why the plain *903 tiffs are restricted in the books and magazines they are permitted to read, or in the manner of obtaining them. In the absence of such necessity as it applies to the members of the plaintiff class, this restriction, on the face of it, clearly violates the First Amendment (Collins v Schoonñeld, 344 F Supp 257). Nevertheless, the defendants should be given the same opportunity of presenting a rational basis for this regulation. If they cannot, they should submit a feasible plan to enable the plaintiffs’ freer and less restricted access to a broader range of reading matter.
The same fair opportunity should be given to the defendants to respond to the plaintiffs’ other demands as well.
The plaintiffs have submitted a multitude of cases to support the granting of all of their demands before the trial.. The fact that other courts may have granted such relief with respect to other institutions is not controlling. Their decisions may have depended upon factors not present here, or different procedural requirements, or simply the manner in which a Judge exercised his discretion.
Even Judge Lasker in Rhem v Malcolm (supra), which is so heavily relied upon by the plaintiffs, did not make his far-ranging decision until after weeks of trial atid the testimony of numerous lay and expert witnesses.
Granting a preliminary injunction as demanded would be tantamount to granting summary judgment in favor of the plaintiffs. Applications of this kind, which seek mandatory relief pendente lite, are rarely granted and only in extraordinary circumstances (7A Weinstein-Korn-Miller, NY Civ. Prac., par 6301.06).
As then Justice Domenick L. Gabrielli, now Judge of the Court of Appeals, observed in Eldre Components v Kliman (47 Misc 2d 463, 465): "Preliminary injunctions which actually determine the litigation and give to one of the parties the exact same relief which might be ultimately obtained after a trial, should be granted, if at all, with great caution and only when the necessity therefor is shown to be urgent.”
Thus it has been held by the Court of Appeals that an injunction in advance of trial is inappropriate unless the undisputed facts are such that a trial is a futility. If there are motives to be probed and opposing equities to be weighed, there should be a searching scrutiny of these matters at a trial (Yome v Gorman, 242 NY 395; see also, Temporary *904 Injunction in Cases Involving Doubtful Questions of Law, 40 Marq L Rev 191).
Accordingly, except as to the preliminary injunctions previously granted by the order of February 28, 1975 and those granted herein, the motion of the plaintiffs is denied.