OPINION OF THE COURT
Lewis R. Friedman, J.
This is an application by petitioner, a tenant at 40 Warren Street, in Manhattan, pursuant to Housing Maintenance Code *10 (Administrative Code of City of New York, tit 27, ch 2) § 27-2029, against the respondent landlord for a permanent injunction to require the landlord to provide and maintain heat at the premises as required by law. The parties have stipulated that the required heat was not provided for six continuous days and that the condition which caused that deficiency has been remedied.
The power of the courts to issue mandatory injunctions to correct housing violations dates from the turn of this century. (Tenement House Act of 1901 § 128, added by L 1901, ch 334, as amended by L 1903, ch 179, repealed by L 1909, ch 99.) Since the creation of the Housing Court in 1972 thousands of injunctions to remove heat, hot water and other violations have been issued every year. Yet, surprisingly, the issue presented by the case at bar, the standard for the issuance of permanent mandatory injunctions to remove violations and to insure compliance with the Housing Maintenance Code, has not been addressed in the reported cases.
Housing Maintenance Code § 27-2121 provides that in any action in the Housing Part of the Civil Court: "the court, on motion of any party or on its own motion, may issue such preliminary, temporary or final orders requiring the owner of property or other responsible person to abate or correct violations of this code * * * or to take such other steps as the court may deem necessary to assure continuing compliance with the requirements of this code”. That section, without doubt, authorizes the court to direct the removal of the violation which constitutes the basis of the action.
Respondent contends that the removal of the condition causing the violation effectively moots the proceeding since there is no need for any further action by the court. Section 27-2121, however, provides for injunctions even though the violation has been removed if the court finds that it is "necessary to assure continuing compliance with the requirements of [the Housing Maintenance] code”. The existence of a violation which forms the predicate for the action gives the court a basis to conclude that there is a problem which the landlord has failed to address. That is, the statute permits the court, once it has concluded that there is a violation of law, to insure that there will be no repetition of the condition causing the violation. An injunction, which is violated only at the risk of a contempt proceeding, has been found by experience and practice in other areas of the law to be an effective enforcement tool.
*11 For example, statutes, such as Executive Law § 63 (12), which originally addressed only "repeated” or "persistent” conduct have been interpreted to include situations where there is a possibility that the defendant may repeat the conduct. (Compare, State of New York v Solil Mgt. Corp., 128 Misc 2d 767, 772-774, affd 114 AD2d 1057, and State of New York v Wolowitz, 96 AD2d 47, with State of New York v Bel Fior Hotel, 95 Misc 2d 901, revd 74 AD2d 692, and Matter of State of New York v Italian Line, 43 NY2d 851.) Clearly the deprivation of heat in violation of law is capable of repetition. Even if the specific cause of the violation was remedied, continuation of compliance with the code should be mandated.
The use of injunctions to prevent future wrongs is well established in the Federal cases. An action for an injunction is available to eliminate the past wrong and, even after the immediate condition has been remedied, to prevent its recurrence. (United States v Grant Co., 345 US 629, 632-633; Swift & Co. v United States, 276 US 311, 326; Seibert v Sperry Rand Corp., 586 F2d 949, 951 [2d Cir 1978].) An action is not moot and can be continued after the cause has been removed "if there is a real threat of recurrence.” (Wisconsin Real Estate Inv. Trust v Weinstein, 530 F Supp 1249, 1251.)
A violation of the legal standards for decent housing presents a strong factual and legal basis for the imposition of a mandatory injunction to prevent a recurrence. "[T]he mandatory injunction has become the housing court’s primary remedial weapon * * * Because its focus is directed to repairs and is backed by the contempt power of the court, the injunctive remedy has proven widely successful”. (Rutzick & Huffman, The New York City Housing Court: Trial and Error in Housing Code Enforcement, 50 NYU L Rev 738, 784-785 [1975].) The legislative purpose for adopting the Housing Maintenance Code (§ 27-2002) coupled with the broad grant of power to this court (CCA 110) combine to require the use of the strongest available instrument for the maintenance and improvement of housing in New York. Injunctions which, if they are violated, authorize the full use of the court’s enforcement devices (see, e.g., Gregori v Ace 318 Corp., 134 Misc 2d 871) should, therefore, be employed when there is a factual basis, such as a proven or admitted violation, in the record. The tenant should not be required to litigate anew the need for adequate heat every time the landlord fails to properly maintain the heating plant. After proof of a violation of law has been proven, the tenant should be permitted to proceed directly to an effective *12 enforcement device for further violations. An injunction provides that opportunity.
Clearly, a code enforcement injunction which is "little more than a direction to do right in the future” would be unenforceable. (Earl v Brewer, 248 App Div 314, 315, affd 273 NY 669; Gimbel Bros. v Brook Shopping Centers, 118 AD2d 532, 536.) The injunction to be issued here will be addressed to the specific violation established here and will, therefore, be sufficiently specific.
The court concludes that the admitted illegal deprivation of heat is capable of repetition; the case is an appropriate one for the issuance of a mandatory injuction "to assure continuing compliance with the requirements” of the Housing Maintenance Code.