OPINION OF THE COURT
Francois A. Rivera, J.
*649 By order to show cause filed on June 1, 2009, New York Methodist Hospital (hereinafter petitioner) seeks a judgment pursuant to section 2801-c of the Public Health Law requiring E.H. (respondent) to discharge himself forthwith from New York Methodist Hospital and to accept placement in any appropriate skilled nursing facility that offers a bed for admission. Petitioner also seeks a sealing of the court records regarding the proceeding pursuant to 22 NYCRR 216.1 and 45 CFR 164.512 (e). Respondent is pro se and orally opposed the application to discharge him.
The court directed service upon the respondent and his sister and conducted a hospital hearing at the respondent’s bedside on June 2, 2009.
Motion Papers
Petitioner’s motion papers include a verified petition, three annexed exhibits, an attorney’s affirmation and a supporting memorandum of law. Exhibit A is a written notice from the Department of Health and Human Services Centers which explains the respondent’s rights for inpatient Medicare and Medicaid services in two sections. The first part advises the Medicare recipient of his right to receive Medicare covered services as a hospital inpatient, the right to be involved in any decision about the hospital stay, and knowing who will pay for it, and the right to report any concern about the quality of care received to a quality improvement organization (QIO). The notice advised that the QIO assigned to this matter was Island Peer Review Organization, Inc. (IPRO) and provided various telephone numbers for it. The second part pertains to planning for the Medicare recipient’s discharge, the right to be informed of the planned discharge date, and to appeal to the QIO. Exhibit B is the petitioner’s notice to the respondent dated April 15, 2009 advising of the petitioner’s intention to discharge him because he was no longer at acute level of care and a bed was available at a nursing home. Exhibit C is page one of two of IPRO’s notice of decision dated May 17, 2009 advising the respondent that in response to respondent’s appeal of the petitioner’s decision to discharge him that it had reviewed the determination and is in agreement with the petitioner’s decision and discharge plan.
Applicable Law
Public Health Law § 2805-b provides in pertinent part as follows:
*650 “Admission of patients and emergency treatment of nonadmitted patients. 1. Every general hospital shall admit any person who is in need of immediate hospitalization with all convenient speed and shall not before admission question the patient or any member of his or her family concerning insurance, credit or payment of charges, provided, however, that the patient or a membér of his or her family shall agree to supply such information promptly after the patient’s admission.”
Public Health Law § 2801-c provides in pertinent part as follows:
“Injunctions. The Supreme Court may enjoin violations or threatened violations of any provisions of this article; and it may enjoin violations of the. regulations of the department adopted thereunder. Upon request of the public health council or the commissioner, the attorney general shall maintain an action in the Supreme Court in the name of the people of the state to enjoin any such violation. Notwithstanding any limitation of the civil practice law and rules, such court may, on motion and affidavit, and upon proof that such violation is one which reasonably may result in injury to any person, whether or not such person is a party to such action, grant a temporary injunction upon such terms as may be just, pending the determination of the action.”
10 NYCRR 405.9 (f) (7) provides in pertinent part as follows:
“The hospital shall ensure that no person presented for medical care shall be removed, transferred or discharged from a hospital based upon source of payment. Each removal, transfer or discharge shall be carried out after a written order made by a physician that, in his/her judgment, such removal, transfer or discharge will not create a medical hazard to the person or that such removal, transfer or discharge is considered to be in the person’s best interest despite the potential hazard of movement. Such a removal, transfer or discharge shall be made only after explaining the need for removal, transfer or discharge to the patient and to the patient’s family/representative and prior notification to the medical facility expected to receive the patient.”
*651 The Hearing
On June 2, 2009, the court conducted a hearing at the bedside of the respondent at New York Methodist Hospital at room 705. The following persons appeared and gave testimony on behalf of the petitioner: Dr. Andrea Fenyves, an attending physician; Dr. Jessy Colah, the chief of psychiatry; Ms. Francesca Bonavita, the supervising social worker; and Ms. Jody Guardino, the respondent’s social worker. Mr. Anthony Brown, respondent’s brother-in-law testified on behalf of the respondent. The hearing record was left open for one week to give Sydney H., the respondent’s sister, an opportunity to testify which she did by speaker telephone conference. Respondent also testified. At the hearing, the petitioner admitted three items into evidence. The first exhibit is the affidavit of service of the instant order to show cause. The second exhibit is the two page IPRO decision dated May 17, 2009, already annexed as exhibit C to the instant motion. The third exhibit is a list of the nursing homes petitioner considered for placement of the respondent.
At the conclusion of the hearing, the court makes the following findings of fact. The respondent is a 32-year-old male who was transferred to the petitioner’s hospital on May 4, 2009 from the Daughters of Jacob Nursing Home (DOJ). The admission was for a primary complaint of hip pain and pain at a bedsore site by the sacrum. The respondent is bedridden and has a degenerative progressive neurologic condition. He has a tracheotomy and requires daily respiratory care. He also receives dialysis three times a week while laying on a stretcher.
The respondent’s acute hip and bedsore pain were treated and respondent was ready for discharge on or about May 13, 2009. The respondent was informed in writing of the intended discharge on May 13, 2009. He immediately appealed the decision to IPRO. On May 14, 2009, respondent received the Medicare notice of discharge annexed as exhibit B to the instant motion. On May 17, 2009, IPRO issued a notice of decision which upheld the discharge decision.
Discussion
The respondent refuses to consider any discharge plan which returns him to DOJ or places him in a borough outside of Brooklyn. The respondent wants to be in a facility that is easily accessible from his sister’s home in Brooklyn and is optimistic that all his medical needs may be met either on an outpatient basis while living with his sister or from a nursing home located *652 in Brooklyn. Neither his sister nor his brother-in-law expressed a willingness to have the respondent live with them. Furthermore, no member of the respondent’s family has any training in managing his respiratory needs which include a constant need for oxygen and management of his tracheotomy.
Dr. Jessy Colah, respondent’s psychiatrist, found that the respondent is alert, oriented to person, place and time; has no cognitive or memory impairment; is coherent and has insight and good judgment. In sum, Dr. Colah opined that the respondent had capacity to make decisions regarding his treatment plan and discharge. Dr. Andrea Fenyves, an attending physician and board certified internist, opined that the respondent does not require acute medical care and that he can be safely discharged to a nursing home.
Petitioner has investigated numerous nursing home facilities to determine which could and would manage respondent’s various complex medical needs. The challenge is finding a suitable facility that will provide the respondent with dialysis treatment while the respondent is lying down on a stretcher. The number of facilities capable and willing to provide this service is surprisingly few. Adding to this issue is respondent’s need for oxygen, and the need to manage his respiratory conditions. Petitioner has demonstrated that the only facility presently capable and willing to meet all the respondent’s needs and accept him is DOJ.
Respondent is competent and capable to make decisions about his treatment and care. Respondent wants the petitioner to locate a suitable nursing facility in Brooklyn or in the alternative discharge him to his sister’s care for outpatient treatment. His desire, however, is at best unreasonable. The petitioner has diligently searched for a nursing facility that would accept the respondent and would be capable of meeting his needs. Unfortunately, no such facility could be located in Brooklyn. Furthermore, his desire to be discharged to his sister’s residence is, at the moment, neither safe nor reasonable. His sister will not take respondent to her home. Instead, she offers the hope and prospect that her mother may be willing to take the respondent to her home. There is no dispute that no member of respondent’s family has any training to manage respondent’s multiple respiratory and other needs.
Petitioner seeks an injunction requiring the respondent to leave the hospital on the basis that he no longer requires acute hospital care and unreasonably refuses to cooperate with his *653 discharge plan. An injunction is a directive of the court requiring a person to refrain from certain behavior or in the case of mandatory injunctions demanding that a person perform certain acts (Matter of Wyckoff Hgts. Med. Ctr. v Rodriguez, 191 Misc 2d 207, 208 [2002], citing McCain v Koch, 70 NY2d 109 [1987]). While injunctions are generally temporary in nature, it is true that mandatory injunctions usually provide the party with the relief sought as a final remedy (Wyckoff Hgts. Med. Ctr. v Rodriguez at 208-209, citing Powlowski v Wullich, 81 Misc 2d 895 [Sup Ct, Monroe County 1975]). It is for this reason mandatory injunctions are uncommon and considered a drastic remedy which should only be utilized where compelling circumstances require it (Wyckoff Hgts. Med. Ctr. v Rodriguez at 209, citing Lexington & Fortieth Corp. v Callaghan, 281 NY2d 526 [1939]).
Thus, where a party is engaged in unlawful conduct which is continuous, then a mandatory injunction is proper (Wyckoff Hgts. Med. Ctr. v Rodriguez at 209, citing Rosenthal v Helfer, 136 Misc 2d 9 [Civ Ct, NY County 1987]). Moreover, where a party acts deliberately and intentionally, a mandatory injunction requiring the party to cease is likewise proper (Wyckoff Hgts. Med. Ctr. v Rodriguez at 209, citing Marcus v Village of Mamaroneck, 283 NY 325 [1940]).
A review of the relevant guidelines in New York, specifically 10 NYCRR 405.1 et seq., reveals that they were meticulously followed in this case. The respondent received written notice of his discharge, such discharge was based on numerous medical examinations, respondent was afforded the opportunity to appeal the discharge determination and, in fact, did so, and was consulted concerning arrangements following his release from the hospital. Respondent has chosen to remain in the petitioner’s facility and has placed unworkable or unreasonable conditions on cooperating with his discharge. The respondent’s failure to consider any other alternatives deprives the public and other needy patients of a bed at the petitioner’s hospital to meet their acute medical needs.
Petitioner has adequately demonstrated its needs for an injunction to discharge the respondent. The respondent must accept placement to any nursing facility which is willing and able to meet his various medical needs. Should respondent find such a facility undesirable for any reason, he may choose to discharge himself either with the consent of the institution or against medical advice as he chooses.
Petitioner’s application to seal the court record is unopposed by the respondent and is premised on a desire to keep the *654 respondent’s confidential medical records private. The court does not consider the issue presented to be of a sufficient public interest to outweigh the privacy interest of the respondent and therefore finds good cause to grant the application. Due to the sealing of the record, the caption was changed to indicate only the initials of the respondent.
In sum, petitioner’s application for a judgment pursuant to section 2801-c of the Public Health Law requiring the respondent to discharge himself forthwith from New York Methodist Hospital and to accept placement in any appropriate skilled nursing facility that offers a bed for admission is granted. Furthermore, petitioner’s application for an order sealing the court records regarding the instant proceeding, pursuant to 22 NYCRR 216.1 and 45 CFR 164.512 (e), is granted.